747 So.2d 442 (1999)
Alwin Charles TUMBLIN, Appellant,
v.
STATE of Florida, Appellee.
No. 99-0126.
District Court of Appeal of Florida, Fourth District.
December 15, 1999.
Richard L. Jorandby, Public Defender, and Kai Li Aloe Fouts, Assistant Public Defender, West Palm Beach, for appellant.
*443 Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, C.J.
Appellant, Tumblin, appeals from his conviction and sentence for attempted robbery with a firearm, attempted carjacking with a firearm, and shooting a deadly missile, asserting that the admission into evidence of an investigating officer's statement implying that Tumblin was pointed out by a co-defendant violated his right to confrontation and prejudiced his right to a fair trial. He also alleges that the victim's in-court identification of appellant as his attacker was unduly suggestive when the victim had failed to identify appellant prior to trial. We agree that the officer's testimony was inadmissible and not harmless and thus, reverse. However, we find no error as to the in-court identification.
On the evening of the robbery, the victim parked his vehicle in his driveway. As he exited the vehicle, he noticed a white Cadillac with a burgundy tire-set attached to the rear pass by his house and stop at the nearby street corner. Two of the three occupants of the vehicle exited the Cadillac and began running toward the victim with guns drawn. One of the perpetrators, later identified as Tumblin, placed a gun to the victim's head and demanded the keys to his vehicle. The victim refused both this demand and Tumblin's demand for money. Tumblin then struck the victim in the head with the gun, fired a shot that missed the victim but hit his house, and then ran from the scene. The entire encounter lasted about five minutes during daylight, and the victim was able to look directly at his attacker.
The victim called the police and gave them a description of Tumblin, the driver of the vehicle, and the vehicle. A BOLO was issued. While responding to the BOLO, Officer Babcock located a vehicle matching the description of the Cadillac outside a rooming house and began to question some men standing near the Cadillac. Among those standing nearby was the co-defendant, Nowell, a very heavy-set man whom the victim testified was the driver of the Cadillac. The contact with Nowell led the police to Tumblin, who was standing further down the street and wearing a blue plaid shirt. The victim had described his assailant as wearing such a shirt. Tumblin was then taken into custody without incident.
At trial, Officer Babcock was asked about Tumblin's arrest. Specifically, the state attorney asked Babcock what made him take Tumblin into custody, advising Babcock not to reveal what anyone told him. The officer stated that the description by the victim including the plaid shirt alerted the officer to him. When asked, "[D]id you make contact [with appellant]," he responded, "Yes, I did, when we made contact with the vethe vehicle and the person next to the vehicle, we soon found out that the second person was down the road and I went to make contact with Mr. Tumblin and brought him back to Officer Montgomery." (emphasis supplied). The defense objected to this testimony based upon appellant's rights under the Confrontation Clause and moved for a mistrial, which the trial court denied, stating that the officer's statement was not responsive to the question and that it was harmless.
In Harris v. State, 544 So.2d 322, 324 (Fla. 4th DCA 1989), we held that an investigating police officer's testimony as to statements made by a non-testifying witness are not hearsay and do not violate the Confrontation Clause where they are necessary to show a logical sequence of events. However, as the supreme court noted in Conley v. State, 620 So.2d 180, 182 (Fla.1993), which approved Harris, "[W]hile police may testify that they arrived on the scene because of a statement made to them, the content of that statement is inadmissible, especially where it is accusatory." (emphasis in original). In State v. Baird, 572 So.2d 904 (Fla.1990), the supreme court warned that Harris *444 allows only a limited use of such statements:
[W]hen the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to an arrest, the need for the evidence is slight and the likelihood of misuse is great.... [T]he better practice is to allow the officer to state that he acted upon a "tip" or "information received," without going into the details of the accusatory information.
Id. at 908 (citation omitted).
We find this case analogous to Postell v. State, 398 So.2d 851 (Fla. 3d DCA), rev. denied, 411 So.2d 384 (Fla.1981). In Postell, a "mystery woman" was an eyewitness to a crime and indicated to investigating officers that the defendant was one of the perpetrators. The trial court allowed an officer to testify that after his conversation with this woman he responded to the defendant's residence and arrested him. On appeal, the third district held that where "the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated, notwithstanding that the actual statements made by the non-testifying witness are not repeated." Id. at 854 (footnotes omitted).
Similarly, in this case the jury was informed that the officer approached a man (appellant's co-defendant) near the vehicle that was observed at the scene of the crime. After talking with the man, the officer testified, "[W]e soon found out that the second person was down the road...." (emphasis supplied). The inescapable inference is that the co-defendant told the officer that Tumblin, the second person involved in the crime, was down the road. As then Judge Anstead said in quoting an appellant's brief in his dissent in Rodriguez v. State, 624 So.2d 380, 381 (Fla. 4th DCA 1993), "It doesn't take a rocket scientist to make the logical inference from that data." The admission of this testimony was error.
The only other evidence directly linking appellant to the crime was the incourt identification of the victim. The appellant challenges the identification as unduly suggestive because the victim had been unable to identify the appellant prior to trial. In fact, the night before the trial the victim could not pick out appellant's picture from a photo line-up. Nevertheless, at trial the victim testified that he was able to recognize the appellant as the attacker from the moment appellant entered the courtroom. Over the defense objection, the court permitted the victim to identify the appellant during the trial.
Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), set the standard for determining the admissibility of suggestive identification procedures, which includes an in-court identification. The court held that:
reliability is the linchpin in determining the admissibility of identification testimony.... The factors to be considered are set out in [Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) ]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
432 U.S. at 114, 97 S.Ct. at 2253; see also Edwards v. State, 538 So.2d 440 (Fla.1989). After weighing the various factors, the Court in Manson concluded:
Surely, we cannot say that under all the circumstances of this case there is "a very substantial likelihood of irreparable misidentification." [quoting Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 *445 (1968)]. Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.
432 U.S. at 116, 97 S.Ct. at 2254 (emphasis supplied).
In the instant case, the victim did not identify the appellant prior to trial, and the night before he testified he was shown a photo lineup but could not pick out the appellant's photograph. The record, however, does not reflect how closely the photograph(s) resembled the appellant. In addition, the trial took place only four and one half months after the incident. At the time of the incident the victim had an adequate opportunity to observe the appellant during the incident and was able to describe his attacker in some detail to the police (young, black male, short cut hair, wearing a bluish-white plaid shirt, between the ages of 18-25). We conclude that the trial court did not abuse its discretion in permitting the in-court identification. Based on all the factors, we cannot conclude that there was "a very substantial likelihood of irreparable misidentification." Id. While there are questions relating to the reliability of the identification, those questionable features can be (and were) probed on cross-examination and are of the type that the jury can resolve.
We distinguish State v. Walker, 429 So.2d 1301 (Fla. 4th DCA 1983), which affirmed a trial court's suppression of an in-court identification after a victim could not identify the appellant in a pretrial photographic lineup. Not only was the description of the perpetrator more detailed in the instant case than in Walker, but our court's ruling affirmed the exercise of the trial court's discretion. Likewise, we also affirm the exercise of the trial court's discretion in allowing the in-court identification where the questionable features of reliability did not irreparably taint the identification.
Other than the identification of the appellant by the victim, which was questionable, little direct evidence linked the appellant to the crime. Thus, we cannot conclude that the error in admitting the officer's testimony in violation of the Confrontation Clause was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The logical inference from that evidence was an accusatory statement by the co-defendant of appellant's involvement which would lend significant support to the in-court identification. For this reason, we reverse the conviction and sentence and remand for a new trial.
DELL and TAYLOR, JJ., concur.