769 So.2d 496 (2000)
Charles SCHAFFER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1522.
District Court of Appeal of Florida, Fourth District.
October 18, 2000.
*497 Richard L. Jorandby, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
A jury convicted defendant of possession of cocaine with intent to deliver as charged. Because the trial court admitted prejudicial hearsay, we reverse and remand for a new trial.
A confidential informant (CI) working with the police department was said to have set up a "buy-bust" sting operation with defendant. The CI called someone on the phone while police listened to only the CI's end of the conversation. Afterwards the police followed the CI to a parking lot. Defendant soon arrived in his car. As he arrived at the location police blocked his vehicle and arrested him. Their search found cocaine hidden on his person.
After the arrest, the CI disappeared before defendant had the opportunity to take a pretrial deposition. Defendant moved in limine to exclude any reference to the CI and, equally, any testimony about conversations with the CI. The trial judge ruled that the arresting officers could testify as to the actions they had taken but could not testify as to what the CI had told them.
During the prosecutor's opening statement, he said the following:
"Well, what happened is that there's a man named Robert Grazzia [CI], who you're not going to hear from. Okay. He's a man that was working with the police. You're going to hear that Mr. Grazzia was working with detectives ... What they will tell you is that there was a conversation between [CI and Schaffer]... They are going to tell you that based on that conversation, that they went to a certain location with Mr. Grazzia." [e.s.]
Then during the prosecutor's direct examination of one of the officers involved, the prosecutor elicited testimony as to a police technique called a "buy-bust" operation in which the police have information about a subject involved in the selling of illegal narcotics who is ultimately arrested. The officer described that on the day in question *498 he was working with the CI who provided information to him. At that point, the following ensued:

State: Okay. And after this phone call happened [by the CI], what happened next?

Officer: A conversation ensued between 

Deft: [hearsay objection]

Court: Overruled. The fact that there was a conversation is admissible. What's in the conversation is not admissible....

State: Okay. And after this conversation, what did you do?

Officer: Based on the information I received from the confidential informant, I

Deft: I'm going to object. It's hearsay.

Court: Overruled.
Later a second officer testified for the state. He said that he "was called to be part of a support unit for [the other officer], who said he had someone who was supposed to deliver an amount of narcotics." Although the trial judge sustained defendant's immediate objection and instructed the jury to disregard the statement, the court denied a mistrial.
In closing argument, the prosecutor made specific reference to the information provided by the CI. Referring to the telephone conversation, he said "[t]here has been no testimony about who that is, but circumstantial evidence can tell you that whoever got beeped is the one that called back ... We don't know who it is, but we can assume it was the person who got paged." Then as to why the police went to a specific location after the telephone conversation, the prosecutor argued:
"Now we don't know why they went to [the location] because there's no evidence of that, but circumstantial evidence says I can tell you why they went to the parking lot."
As to why the officers were looking for a specific auto at that location, he said "the evidence doesn't show why he was looking for [the auto]. Circumstantially you can see why they are looking for [it]." He continued:
"You don't have to speculate about this. This isn't all speculative. You don't have to guess in your mind why this all took place. You know from the evidence.... When you look at this buy-bust operation, I mean, didn't this go exactly as the [police] wanted?"
This was all impermissible; the evidence was inadmissible hearsay. Where the implication from in-court testimony is that a non-testifying witness has made an out-of-court statement offered to prove the defendant's guilt, the testimony is not admissible. In Collins v. State, 65 So.2d 61 (Fla.1953), the court had appeared to allow an officer to testify as to what he did as a result of information received from another but would not permit the officer to state the information so received unless it otherwise met a recognized hearsay exception. Several years later in State v. Baird, 572 So.2d 904 (Fla.1990), the court explained that Collins had predated the Florida Evidence Code[1], and that such hearsay was impermissible.
In Baird the officer was permitted to testify that he had received information that the defendant was a major gambler operating a gambling enterprise in the community. Further explaining why this kind of testimony is improper, the court said:
"we cannot agree that the challenged testimony was admissible to present a logical sequence of events to the jury. We agree with the Fourth District Court of Appeal in Harris v. State, 544 So.2d 322, 324 (Fla. 4th DCA 1989), that when the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to *499 an arrest, the need for the evidence is slight and the likelihood of misuse is great. In light of the inherently prejudicial effect of an out-of-court statement that the defendant engaged in the criminal activity for which he is being tried, we agree that when the only relevance of such a statement is to show a logical sequence of events leading up to an arrest, the better practice is to allow the officer to state that he acted upon a `tip' or `information received,' without going into the details of the accusatory information." [c.o.]
572 So.2d at 907-908.
In Conley v. State, 620 So.2d 180 (Fla. 1993), the trial judge admitted a police dispatch report that a man was chasing a woman down the street with a gun or rifle. The court again explained:
"Even if we were to conclude that the testimony was not used to prove the truth of the matter asserted, the contents of the statement were not relevant to establish a logical sequence of events, nor was the reason why officers arrived at the scene a material issue in the case. As we said in Baird, the inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information to establish the logical sequence of events outweighs the probative value of such evidence. Such practice must be avoided." [c.o.]
620 So.2d at 183.
Then in Wilding v. State, 674 So.2d 114 (Fla.1996), the prosecutor was allowed to ask the officer if a tip identified defendant by name. The court again disapproved this tactic, saying:
"While it might have been permissible to allow the detective to testify that police began the investigation because of a `tip' or `information received,' this testimony clearly went beyond that authorized in State v. Baird, 572 So.2d 904 (Fla. 1990)....
We recognize that the information received in the tip in this case was not detailed to the jury to the same extent as was the information received in Baird. However, similar evils are involved in both cases. As noted by the Third District Court of Appeal in Postell v. State, 398 So.2d 851, 854 (Fla. 3d DCA), review denied, 411 So.2d 384 (Fla.1981), where `the inescapable inference from testimony [concerning a tip received by police] is that a non-testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated, notwithstanding that the actual statements made by the non-testifying witness are not repeated.'" [f.o.]
674 So.2d at 118-119; see also Tumblin v. State, 747 So.2d 442, 444 (Fla. 4th DCA 1999) (trial court improperly allowed officer to testify that he arrested the defendant after talking with a non-testifying eye-witness); Trotman v. State, 652 So.2d 506, 507 (Fla. 3d DCA 1995) (trial court erred in permitting officer to testify that he went to the location of crime and arrested defendant after speaking to unidentified, non-testifying witness).
Even more recently in Keen v. State, No. SC88802, 2000 WL 1424523, ___ So.2d ___ (Fla. Sept.28, 2000), an officer was permitted to testify that the police received information from two insurance companies and the brother of the accused linking him to a murder of the defendant's wife, under the theory of explaining a police investigation. The state argued that the testimony was necessary to show a sequence of events. The court held:
"We reject such contention. First, this Court clearly instructed in Baird, reaffirmed in Conley, and confirmed in Wilding that an alleged sequence of events leading to an investigation and an arrest is not a material issue in this type of case. Therefore, there is no relevancy for such testimony to prove or establish such a nonissue. When the only possible relevance of an out-of-court statement is directed to the truth of the *500 matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence seeks to clothe such hearsay under a nonhearsay label.
Second, facts concerning the purported determination by insurance companies after investigation that this case involved a murder, not an accident, were used by the State during closing argument for substantive support not `sequence of events' purposes. Thus, regardless of the purpose for which the State now claims the testimony to have been directed, the evidence was in fact used to prove the truth of the content rendering the content of the statement hearsay. See Conley (holding that regardless of the purpose for which a party claims it has offered evidence, when an out-of-court statement is used as evidence to prove the truth of the matter asserted, such statement constitutes hearsay and falls within no recognized exception)." [c.o.]
2000 WL 1424523 at *28, ___ So.2d at ___.
The inadmissible hearsay in this case bears its own features functionally indistinguishable from Baird, Conley, Wilding, and Keen. The officers first set the stage by testifying as to police procedures for "buy-bust" sting operations. Then over objections, the court permitted the officers to state that, after speaking with the CI, they drove to a parking lot, waited specifically for defendant in his specific car, and arrested him upon his arrival. The inescapable implication of this testimony is that the CI told the police that he had set up a buy-bust transaction with defendant, who had agreed to sell cocaine to the CI. The testimony of the officers was offered to prove the matter asserted by the declaration, namely that defendant had agreed to sell cocaine to the CI.
Because the CI did not testify at trial, he could not be cross-examined. Defendant was thus denied the opportunity to challenge the CI's credibility before the jury. His right to confront his accusers was thereby improperly abridged. See Wilding, 674 So.2d at 118-119.
Other than the implication of the hearsay that defendant had agreed to sell narcotics, the state offered no proof of defendant's connection with any illegal conduct, no indication that he was committing a crime, at the moment of the arrest. Baird and Conley both recognize the:
"inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information to establish the logical sequence of events outweighs the probative value of such evidence." [e.s.]
620 So.2d at 183. See also Keen, 2000 WL 1424523 at *28, ___ So.2d at ___ ("This Court has repeatedly admonished that the admission of this type of evidence is inherently prejudicial as can be seen in Wilding, Conley, and Baird."). The state has failed to dispel the showing of prejudice, and thus the error cannot be said to be harmless. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999) ("The harmless error test... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."); State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (error is harmless only if it can be said beyond a reasonable doubt that the error did not effect the verdict). Because we are unable to say that this inadmissible evidence did not contribute to the verdict, a new trial is required.[2]
*501 We briefly address the sentencing issues. The severity level of the offense is 5, and defendant had a prior conviction. The guidelines point total was 37, which the trial court could, but did not, enhance by 15% as he had discretion to do. The sentence actually imposed was 22 months incarceration, followed by 2 years community control, followed by 3 years probation. If it is necessary to sentence defendant, the court should note that the total of any combination of incarceration and community control may not exceed 22 months. See Fla.R.Crim.P. 3.703(d)(27) (1997) ("A person sentenced for a felony committed on or after July 1, 1997, who has at least one prior felony conviction and whose recommended sentence is any nonstate prison sanction may be sentenced to community control or a term of incarceration not to exceed 22 months." [e.s.]). But the court did not err in sentencing defendant to a succeeding period of 3 years probation because a guideline sentence caps a split sentence only where the guideline sentence exceeds the statutory maximum sentence. See Fla.R.Crim.P. 3.703(d)(31) ("The total sanction (incarceration and community control or probation) shall not exceed the term provided by general law ..."); and Cauble v. State, 742 So.2d 422, 423 (Fla. 2d DCA 1999) (because recommended guideline sentence did not exceed statutory maximum, split sentence not limited to the guidelines maximum).
REVERSED FOR NEW TRIAL.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] See Ch. 90, Fla. Stat. (1999).
[2] As we have just shown, prejudice in this case is clear because of the "inherently prejudicial" nature of this hearsay and the failure of the state to dispel an inference that the hearsay affected the jury's decision. If it were still necessary in this case to demonstrate prejudice, we would also note that the weight of the cocaine was 6.1 grams, or well under 28 grams; that the jury had the choice of the lesser included offense of simple possession but convicted defendant only of the charge of possession with intent to deliver. There was no evidence to support the intent to deliver other than the hearsay that we have found inadmissible.