778 So.2d 452 (2001)
Gerald STRIBBLING, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3236.
District Court of Appeal of Florida, Fourth District.
February 14, 2001.
Carey Haughwout, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
DELL, J.
Gerald Stribbling timely appeals from a conviction and sentence of life in prison for first degree murder with a firearm. He raises four (4) points on appeal, one of which merits discussion and a reversal for a new trial. Appellant contends that he is entitled to a new trial because the state's lead detective improperly testified that he did not have a suspect for the crime until he received a telephone message the day after the shooting in which appellant was *453 named as the perpetrator. We agree and reverse.
Appellant was charged by indictment with the premeditated first degree murder of Otis Phillips. Mr. Phillips was shot twice while at the A & M Discount Beverage store in Fort Pierce. Thereafter, he went inside the store and died on the scene. No physical evidence linked appellant to the crime. The police did not recover the gun or connect bullets found at appellant's grandmother's house to the crime. None of three videotape recordings of the store that night showed appellant at the store.
The State's evidence consisted mainly of the testimony of Nicola Tucker, appellant's stepsister, and Sherry Flynn, appellant's girlfriend at the time of the crime. Tucker testified that appellant gave her a ride home on that night. As they passed the convenience store, appellant told her that a guy at the store was the one who "went with Pumpkin," one of his former girlfriends. Appellant then parked next to a red truck and went inside to talk to a man wearing black shorts and a dark hat. After appellant came out of the store, they drove to another store. Appellant stated, "Told him, if I catch him slippin', I was going to get him."
According to Tucker, after they got home appellant changed into a hooded sweater and left in his car carrying black gloves and a little round silver thing that looked like a gun. Before appellant left, Tucker told him not to do it. Appellant told Tucker to get out of the car and then left. Appellant returned 15 to 20 minutes later, as his mother received a telephone call that "someone done shot that boy." Appellant showed Tucker a Wendy's receipt and told her it was his alibi. Appellant also sang a song, saying he shot [Phillips], [Phillips] was shaking, so [appellant] shot him again. Tucker admitted she did not tell the detective about the song, and she also did not implicate appellant when Detective Nedd first questioned her.
The day of the murder, Tucker had been arrested for violating her probation for child neglect. It was established at trial that she had been convicted of writing two worthless checks and shoplifting. Tucker also gave conflicting stories to police regarding the events of the night of the murder.
Sherry Flynn testified that on the same night, appellant put something in the trunk of her car and when they arrived at appellant's grandmother's house, he took a Foot Locker bag inside with him. He came back without it. Later, appellant threw away one black and two white hooded sweatshirts. He then took a receipt from Wendy's and put it in a shoe box under his bed. Two and a half months later appellant told her that he saw Phillips parked by a store and he shot him. He stated that he shot Phillips "once he caught him slippin'." Flynn did not, however, tell Detective Nedd the story she told at trial until she had stopped seeing appellant. Flynn had also been convicted of petit larceny.
Detective Nedd testified that he was the lead detective on the case and that he first obtained information about "someone" committing the crime on the day following the murder. He stated, "I received a phone message on my answer [sic] service leaving the name." Defense counsel then objected to the statement on hearsay grounds, to which the trial court responded: "He can testify to that he said he received a phone message and go ahead and proceed from there over the objection." Detective Nedd then added, "... and which offered me a name as Gerald Stribbling." Defense counsel renewed his objection, which resulted in a sidebar and defense counsel's motion for mistrial and request for a curative instruction. The State responded that the statement identifying appellant was not offered for the truth of the matter, but to show why the detective proceeded to investigate appellant as a possible suspect. The trial court *454 denied appellant's motion for mistrial and declined to give a curative instruction.
Appellant argues that he is entitled to a new trial because of Detective Nedd's improper testimony regarding the contents of the telephone message he received. In Wilding v. State, 674 So.2d 114 (Fla.1996), receded from on other grounds, Devoney v. State, 717 So.2d 501 (Fla.1998), the prosecutor asked a detective during direct examination whether the anonymous tip he received gave the name Neil Wilding. The detective was allowed to testify, over objection, that it did. The State argued that the testimony was relevant because it had taken four years to arrest Wilding for the murder and the testimony established a logical sequence of events leading to the arrest. The supreme court noted:
As a general rule, the investigation leading to the defendant's arrest is not at issue in a criminal trial. Placing information before the jury that a non-testifying witness gave police reliable information implicating the defendant in the very crime charged clearly could affect the verdict.
Id. at 119. More recently, in Keen v. State, 775 So.2d 263 (Fla.2000), a police officer was allowed to testify that police received information from two insurance companies and the defendant's brother linking the defendant to the murder of his wife. The testimony was allowed under the State's theory that such testimony was necessary to show a sequence of events. The supreme court disagreed:
We reject such contention. First, this Court clearly instructed in State v. Baird, 572 So.2d 904 (Fla.1990), reaffirmed in Conley, and confirmed in Wilding that an alleged sequence of events leading to an investigation and an arrest is not a material issue in this type of case. Therefore, there is no relevancy for such testimony to prove or establish such a nonissue. When the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence seeks to clothe such hearsay under a nonhearsay label.
775 So.2d at 274. See also Schaffer v. State, 769 So.2d 496 (Fla. 4th DCA 2000).
In Schaffer, the officers, while relating the confidential informant's (CI's) involvement in the buy-bust sting operation, identified the defendant by name. Over the defendant's objections "the court permitted the officers to state that, after speaking with the confidential informant, they drove to a parking lot, waited specifically for defendant in his specific car, and arrested him upon his arrival." Id. at 500. This Court concluded:
The inescapable implication of this testimony is that the CI told the police that he had set up a buy-bust transaction with defendant, who had agreed to sell cocaine to the CI. The testimony of the officers was offered to prove the matter asserted by the declaration, namely that defendant had agreed to sell cocaine to the CI.
Id. (Citation omitted.)
In Shaffer v. State, 619 So.2d 409 (Fla. 4th DCA 1993), a police officer testified that a nontestifying store clerk positively identified appellant when the two men returned to the store for a show-up. We held that the testimony which contained a hearsay statement that identified appellant as the perpetrator was "so thoroughly prejudicial that it cannot be cured by a simple admonition to disregard it under the facts of this case." Id. at 410 (citation omitted).
Thus, we reject the State's argument that Detective Nedd's testimony was admissible to establish a logical sequence of events and show why he proceeded to investigate appellant as a possible suspect. In Conley v. State, 620 So.2d 180 (Fla. 1993), the supreme court stated that: "[W]hile police may testify that they arrived on the scene because of a statement made to them, the content of that statement *455 is inadmissible, especially where it is accusatory." Id. at 182.
We also reject the State's contention that error, if any, was harmless beyond a reasonable doubt. The objectionable statement was made by a police officer, whose testimony was likely accorded a high degree of credibility by the jury. As the Fifth District expressed in Bowles v. State, 381 So.2d 326, 328 (Fla. 5th DCA 1980): "Police officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy."
Identification was the key factor in this case and the unknown caller's identification of appellant as the perpetrator specifically linked him to the murder. Without the objectionable testimony, the State's case consisted primarily of the testimony of Nicola Tucker and Sherry Flynn. The only witness on the scene, Emma Nunez, was unable to identify appellant in a lineup. She stated that she had not seen appellant's face, only that he was wearing a gray or white hooded sweater.
The burden to show the error was harmless remains on the State. The State has not met that burden and we cannot conclude beyond a reasonable doubt that the error did not affect the jury's verdict. Accordingly, we reverse and remand for a new trial. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999); State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
REVERSED and REMANDED.
WARNER, C.J., and HAZOURI, J., concur.