869 So.2d 1280 (2004)
Sainovul SAINTILUS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-2592.
District Court of Appeal of Florida, Fourth District.
April 21, 2004.
*1281 Carey Haughwout, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Barbara A. Zappi, Assistant Attorney General, Fort Lauderdale, for appellee.
FARMER, C.J.
Defendant appeals his conviction because of improper and prejudicial evidence used against him by the state. We reverse his conviction because the trial court erred in allowing detectives to testify as to hearsay statements identifying defendant as the perpetrator.
The crimes occurred in mid-morning in front of a bank. The victim was shot during a struggle with an assailant over a bank deposit bag and was in a coma for several weeks. When he awoke from the coma, he identified defendant from a photo array as his attacker. A few months later, he identified defendant in a live lineup. And three other witnesses identified him in a photo lineup. Yet six other witnesses could not identify him. No physical evidence linked him to the crime. He asserted an alibi defense at trial, that he was at home on the morning of the crime watching television and playing games with his girlfriend and his friend Billy.
At trial during the state's case, the prosecutor questioned a police officer who had investigated the case and compiled the photo lineup. The following exchange occurred:
State: On your investigation interviewing witnesses, did you get a possible suspect, a nickname who could be in this case?
Witness: Yes, I did.
Defense: Objection to the hearsay, Judge.

*1282 State: For purposes of identification, Judge, it's not hearsay.
Court: Overruled.
State: What was the nickname you received?
Witness: TuTu.
Meanwhile another detective testified that he attempted to "try and identify two individuals whose names were given as Tutu and Eric." Over a hearsay objection, he testified that someone from the police identified "Tutu" as defendant.
The testimony of the two detectives was inadmissible under a number of cases. See, e.g., Wilding v. State, 674 So.2d 114, 118-19 (Fla. 1996), receded from on other grounds by Devoney v. State, 717 So.2d 501 (Fla.1998); Conley v. State, 620 So.2d 180 (Fla.1993); State v. Baird, 572 So.2d 904 (Fla.1990); Hurst v. State, 842 So.2d 1041 (Fla. 4th DCA 2003); Stribbling v. State, 778 So.2d 452 (Fla. 4th DCA 2001).
In spite of substantial authority condemning this attempt to adduce prejudicial hearsay, the state often persists in offering this kind of hearsay to explain the "state of mind" of the officer who heard the hearsay, or to explain a logical sequence of events during the investigation leading up to an arrest. This type of testimony occurs with the persistence of venial sin. The state's insistence on attempting to adduce this particular brand of hearsay requires trial judges to be constantly on their guard against it.
The essence of the officer's testimony here was that unnamed witnesses had identified someone named Tutu as being involved in the robbery. Another detective sought to establish that Tutu was in fact the defendant, based on information he received from still other police officers. The only purpose of this testimony was to admit these hearsay statements to link defendant to the crimes, even though such hearsay is clearly inadmissible. For as we have explained,
"[w]here the implication from in-court testimony is that a non-testifying witness has made an out-of-court statement indicating a defendant's guilt offered to prove the defendant's guilt, the testimony is not admissible."
Schaffer v. State, 769 So.2d 496, 498 (Fla. 4th DCA 2000).
The state argues that the testimony was admissible to "show why the officer prepared an array of photographs which included the defendant's photograph." But a "police officer's state of mind is generally not a material issue in a criminal prosecution." Baird, 572 So.2d at 907. Nor is it necessary for the police to show why they prepared an array of photographs or even, necessarily, why they included a defendant's photo in the group. If this testimony is not being offered for the truth of its contentsas evidence of defendant's guiltplainly it is not admissible because it is irrelevant.
This case is very similar to Wilding. There, the prosecutor was allowed to ask the lead detective in a murder investigation if he had received an anonymous tip that named the defendant in connection with the murder. 674 So.2d at 118. The argument for admissibility was that the testimony was relevant "to show the logical sequence of events regarding the murder investigation." 674 So.2d at 118. The supreme court found that such testimony went beyond that authorized in Baird:
"In Baird, we held that it was error for an investigator to testify that he received information that the defendant, who was on trial for racketeering and bookmaking, was a major gambler and operating a major gambling operation in the area. We explained:
[W]hen the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to an arrest, the need for *1283 the evidence is slight and the likelihood of misuse is great. In light of the inherently prejudicial effect of an out-of-court statement that the defendant engaged in the criminal activity for which he is being tried, we agree that when the only relevance of such a statement is to show a logical sequence of events leading up to an arrest, the better practice is to allow the officer to state that he acted upon a "tip" or "information received," without going into the details of the accusatory information.
572 So.2d at 908.
"We recognize that the information received in the tip in this case was not detailed to the jury to the same extent as was the information received in Baird. However, similar evils are involved in both cases."
Wilding, 674 So.2d at 118-19; see also Tumblin v. State, 747 So.2d 442, 444 (Fla. 4th DCA 1999) (holding it was improper to allow officer to testify that he arrested defendant after talking with a non-testifying eyewitness); Trotman v. State, 652 So.2d 506, 507 (Fla. 3d DCA 1995) (finding that trial court erred in permitting officer to testify that he went to the location of crime and arrested defendant after speaking to unidentified, non-testifying witness).
In Boykin v. State, 601 So.2d 1312 (Fla. 4th DCA 1992), we found similar testimony harmless. We do not find these errors to be harmless in this case because of the conflicting testimony over the identification of the perpetrator of the robbery. In many cases we would find such testimony as was adduced here to be prejudicial.
REVERSED FOR NEW TRIAL.
GUNTHER and GROSS, JJ., concur.