RAMIREZ, J.
Kendrick Demonte Edwards appeals his conviction for armed robbery, contending that the State of Florida’s use of inadmissible identification hearsay by a declarant who did not testify at trial severely prejudiced his case. Because we agree with Edwards, we reverse and remand for a new trial.
Late at night on May 31, 2003, Sean Tomlin went with four friends to a Miami convenience store. As Tomlin was leaving, a car pulled up, and a man carrying a gun got out and approached Tomlin. The man addressed Tomlin by his first name, and said, “[w]hat the [expletives] you and my home boy going through?” He pointed the gun at Tomlin and made Tomlin surrender his expensive, custom-made medallion and chain that he was wearing. After the robber took the necklace, Tomlin’s friends ran toward him, but the robber pointed his gun at them and they backed off. The robber got in the car and fled. Tomlin and his friends got in Tomlin’s car to pursue the robber but were unsuccessful. They did not get the license number of the robber’s car.
When the police arrived, they took down the witnesses’ description of the robber as a black male, dark complexion, six feet tall, 170 pounds, with a black T-shirt, black baseball cap, and wearing a white bandana over his face. No witness mentioned any tattoos on the robber’s arms.
The next day, Tomlin went to the Cutler Ridge Flea Market to order a replacement medallion. He heard a man telling three male companions how he had told someone, “let me have this sh[ ].” Tomlin recognized the man as the robber. Tomlin could see the stolen medallion, so he ran to get a policeman but the suspect ran away. The police did not catch the suspect, but apprehended Nikeisha Eulaine, who was allegedly with the suspect. Eulaine did not testify at trial, but the trial court allowed police to testify, over defense objection, that she had given them information that led them to Edwards. The police presented Tomlin with a six-picture photo line-up, and Tomlin identified Edwards, who was arrested and charged with armed robbery.
*310 At trial, Tomlin testified, along with his companions. His brother testified that the robber’s bandana did not cover his nose, but the defense pointed out that the witness had stated the opposite in a deposition. One of Tomlin’s friends had stated in a deposition that the bandana covered the robber’s nose, but he said at trial that the bandana “could have” slipped below the nose. Tomlin’s three friends did not identify Edwards as the robber.
During trial, the defense pointed to several discrepancies in Tomlin’s testimony. For example, Tomlin said that one of the reasons he recognized Edwards was that his eyes and nose were the same, but he had reported to police that a white bandana covered the robber’s face “from the nose down.” Tomlin testified that the robber had short pants, but later admitted he was not sure. Tomlin stated that he had never seen Edwards before the robbery. He also admitted that in a deposition, he said he had seen him before, but that his hair was different. Tomlin admitted that when he saw Edwards at the flea market, he did not see any woman with him, and that when he picked out Edwards’ picture, he was picking out the man he saw at the flea market, not necessarily the man who robbed him. Tomlin said that there were some white people in the photo line-up, an assertion contradicted by the police and by the actual photo lineup in the record. Tomlin admitted that he testified in his deposition that he could see the robber’s arms and did not notice any tattoos. In court, it was clear that Edwards did have tattoos.
The State presented Lieutenant Howett, who patrolled the flea market, and Detective Goldblatt, who responded to Tomlin’s call on the night of the robbery. Howett could neither apprehend the suspect at the flea market, nor any of his male companions, but he did apprehend Eulaine. Over defense objection, Howett was allowed to testify that Eulaine’s information led to a suspect, although he did not specify who the suspect was. Eulaine did not testify at trial. Howett said he forwarded Eulaine’s information to Detective Goldblatt.
When Goldblatt testified, he said that he had responded to the original robbery report and that the information he received from Howett led to a suspect. He said that Eulaine confirmed that she was with Edwards at the flea market, and Tomlin selected Edwards from the photo line-up that ensued. Edwards was then arrested. Goldblatt testified that Edwards gave his weight as 200 pounds but that witnesses had described the robber as weighing around 170 pounds. Goldblatt conceded that there was no physical evidence linking Edwards to the crime and that the stolen necklace and the firearm were never recovered. The State, in closing, stated that Eulaine had confirmed that Edwards had fled from the flea market. The defense objected and moved for mistrial, which was denied. The jury found Edwards guilty of armed robbery with a firearm, and he was sentenced to life in prison.
Edwards now contends that the State was improperly allowed to elicit hearsay testimony from the two police officers that Eulaine, who never testified, had identified him as the person at the flea market. We agree that this case is controlled by Postell v. State, 398 So.2d 851 (Fla. 3d DCA 1981), and its progeny, and thus requires reversal.
In Postell, a policeman testified that as a result of a conversation he had with an unnamed woman who did not testify at trial, he arrested the defendant. Id. at 853. This Court stated:
[Wjhere ... the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant’s guilt, the *311 testimony is hearsay, and the defendant’s right of confrontation is defeated, notwithstanding that the actual statements made by the non-testifying witness are not repeated.
Id. at 854 (emphasis added); see also Keen v. State, 775 So.2d 263, 271-75 (Fla.2000); Tumblin v. State, 747 So.2d 442, 444 (Fla. 4th DCA 1999); Trotman v. State, 652 So.2d 506, 507 (Fla. 3d DCA 1995).
In the case before us, the ' defense brought up the issue of whether Eulaine’s statements would be admitted before the two officers testified. Both the State and the trial court agreed that Eulaine’s statements would not be admitted. Nevertheless, Howett testified that Eulaine’s information led to a suspect. Howett did not divulge the contents of the conversation. Goldblatt later testified that after speaking with Eulaine, he compiled the photo lineup that included Edwards’ picture. Gold-blatt further testified that Eulaine confirmed that she was at the flea market with Edwards.
A statement is not hearsay under section 90.801(2)(c), Florida Statute (2002), if it is “[o]ne of identification of a person after perceiving the person,” but it applies only when the declarant testifies at trial. Here, Eulaine did not testify, thus her identification of Edwards as the suspect at the flea market was inadmissible hearsay and cannot be admitted under this exception. The admission of this hearsay testimony violated Edwards’ right to confront the witness against him, and thus was error.
In addition, the admission of Eu-laine’s hearsay testimony was harmful error. Here, the non-testifying witness identified Edwards as being at the flea market. The State had no physical evidence, such as DNA or fingerprints, against him. The State never recovered the stolen necklace or the gun used in the crime. No witness described the robber’s face because he was wearing a bandana and a baseball cap that covered his face except for his eyes. The only evidence the State had linking Edwards to the crime was Tomlin’s testimony that he had seen the robber the next day at the flea market wearing the stolen necklace under a jersey and bragging about the robbery. However, Tomlin’s credibility was impeached various times during his testimony. Clearly, the State needed Eulaine’s identification or else their case against Edwards was considerably weaker. Consequently, this hearsay evidence could not have been harmless error.
The State contends that Zuluaga v. State, 915 So.2d 1251 (Fla. 3d DCA 2005), supports its position that a Postell error may be harmless. We disagree because the facts of Zuluaga are distinguishable.
In Zuluaga, the State introduced evidence that a shipment of Ecstasy had been smuggled into the country. Id. at 1252. The statement did not in any way connect the defendant to the drug shipment. Id. Furthermore, the statement was not relevant in any way to the only disputed issue at trial, which was whether the defendant knew that the pills he was selling were illegal. Id. at 1253. Thus, this Court found that the admission of this statement was harmless error. Id. at 1256.
Here, Eulaine identified Edwards as the person who ran from the flea market wearing the stolen necklace. No other witness was able to identify Edwards as the perpetrator because the robber’s nose and mouth were covered by the bandana when the robbery occurred. The flea market incident, where Tomlin stated he saw someone wearing his medallion and allegedly bragging about the robbery, was the point at which evidence linking Edwards to the crime was brought to light. Tomlin *312 testified that when he picked Edwards’ photo out of the line-up, he was picking the photo based on his memory of the person he saw at the flea market, not the person who robbed him.
In sum, the trial court erred in admitting this hearsay evidence by a non-testifying witness. This evidence severely prejudiced Edwards’ case, thus we reverse and remand for a new trial.
Reversed and remanded.