RAMIREZ, J.
Carlos Alvarez appeals his conviction and sentence for false imprisonment, burglary with assault or battery, and strong arm robbery. Due to the cumulative effect of the trial court’s errors and the lack of evidence connecting Alvarez to the robbery, we reverse.
The victim was at home on the afternoon of April 2, 1998, when she heard the sound of a key turning in the front door lock. Thinking her sister had returned home, she was approaching the front door when two unknown men entered the apartment. The men wore gloves, but no masks. One man covered the victim’s mouth with his hand and forced her into the guest bedroom, repeatedly asking, “Where is the money?” The second man searched the apartment, ransacked the master bedroom, and emerged with an envelope after yelling, “Bingo!” The two men then left the apartment.
The victim eventually identified Alvarez as the man who covered her mouth, but she originally described him as having short blonde hair, light brown eyes, approximately six feet tall and weighing 180 pounds. Alvarez in fact has light brown hair, green eyes and weighs 225 pounds.
Detective Goldblatt, the leading investigator, testified that nine days after the robbery, a business partner of the victim’s brother-in-law called to give the detective a telephone number. The number had been registered one hour before the robbery by the caller ID box at the victim’s apartment. The business partner told Detective Goldblatt that he had called the number and someone named Roberto answered. The number had been issued to a cell phone belonging to Gloria Quintana, who Detective Goldblatt determined was co-defendant Roberto Clavijo’s mother-in-law. Telephone company records indicated that the cell phone had been used to call the victim’s number on the day of the robbery. The victim subsequently identified Clavijo as one of the robbers.
Detective Goldblatt also testified that, several months after the robbery, he became aware of a Crime Stoppers tip concerning Clavijo. The tip also mentioned four other men known to associate with Clavijo, Alvarez among them. Alvarez was described as having blonde hair and green eyes, weighing 225 pounds and being 5'll" tall. The victim identified Alvarez as one of her assailants from a black and white photo line-up shown to her by Detective Goldblatt.
Alvarez contends that it was error for the trial court to allow the State to reopen its case after it had rested and defense counsel had moved for acquittal. We disagree. See K.K. v. State, 717 So.2d 193 (Fla. 5th DCA 1998)(allowing the state to re-open its case is a matter for the trial court’s discretion).
It was error, however, for the trial court to allow Detective Goldblatt to testify as to what the business partner told him concerning the phone number registered by the caller ID. Although the victim testified that she received a call shortly before the robbery from a number she did not recognize, she did not testify as to what the number was and had never mentioned the call to the police. The trial court then stated that “based on [the witness’] investigative experience as a police officer for ten years,” the court would allow the detective to speculate as to why the defendants placed the call and why they did not wear masks. The court’s comments thus served to bolster the detective’s opinions.
In this case, the state offered to prove that Clavijo had made the phone call as a *1258 preliminary step to executing the robbery through the information conveyed by the business associate. Thus, the testimony as to how the police obtained the telephone number that linked Clavijo to the robbery was inadmissible hearsay. See Keen v. State, 775 So.2d 263, 274 (Fla.2000) (“When the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the proponent of such evidence seeks to clothe such hearsay under a non-hearsay label.”). See also Schaffer v. State, 769 So.2d 496, 498 (Fla. 4th DCA 2000) (“Where the implication from in-court testimony is that a non-testifying witness has made an out-of-court statement offered to prove the defendant’s guilt, the testimony is not admissible.”).
The inadmissible testimony cannot be justified on the basis that it provided the jury with a logical sequence of events. The inherently prejudicial effect of admitting an out-of-court statement that is accusatory in nature, solely to establish a logical sequence of events, outweighs the probative value of such evidence. See Conley v. State, 620 So.2d 180, 182 (Fla.1993) (stating that “while police may testify that they arrived on the scene because of a statement made to them, the content of that statement is inadmissible, especially where it is accusatory”). Even if the testimony was offered merely to show the steps taken in the investigation, it still should have been excluded. See Keen, 775 So.2d at 272. For these same reasons, the detective’s reference to a Crime Stoppers tip as being the link between co-defendant Clavijo and Alvarez should likewise not have been permitted. See Metelus v. State, 762 So.2d 940, 943 (Fla. 4th DCA 2000)(police witnesses are permitted to testify that they were acting on a tip, but are not permitted to provide details of the tip).
Trial courts should be reluctant to allow police officers to express their opinions. As the court stated in Bowles v. State, 381 So.2d 326, 328 (Fla. 5th DCA 1980): “Police officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy. A jury is inclined to give great weight to their opinions as officers of the law.” By commenting on the officer’s investigative experience, the trial court enhanced the officer’s opinion testimony.
In this case, hearsay evidence linked Clavijo to the robbery and an anonymous tip linked Alvarez to Clavijo. The only admissible evidence which linked Alvarez to the robbery was the victim’s identification, made three months later, after she saw the perpetrators for only fifteen seconds on the day of the robbery, and after she gave inconsistent descriptions of both perpetrators. Because the link between Alvarez and the robbery was tenuous at best, Detective Goldblatt’s opinions, delivered with the court’s imprimatur, cannot be harmless error.
Reversed and remanded for a new trial.