MILLER, J.
S.H., a juvenile, appeals from an order withholding adjudication of delinquency and placing him on probation for violation of sections 790.115(2), Florida Statutes (2016) ("[p]ossessing or discharging weapons or firearms at a school-sponsored event or on school property prohibited"), and 790.22(3), Florida Statutes ("A minor under 18 years of age may not possess a firearm, other than an unloaded firearm at his home ..."). S.H. contends that the trial court erred in: (1) allowing testimony as to the contents of photographs allegedly depicting S.H. and others with a firearm in the school; (2) admitting S.H.'s extrajudicial confession, over objection, in violation of the corpus delecti rule; and (3) overruling hearsay objections to the contents of an anonymous tip that S.H. possessed a firearm on school property. For the reasons that follow, we affirm.
FACTUAL BACKGROUND AND TRIAL COURT PROCEEDINGS
On May 26, 2017, S.H. was a 14-year old student attending American Senior High School in Hialeah, Florida. Paul Torres, a discipline administrator at the school, was working on campus when another student approached him and School Resource Officer Jose Perez to report an issue. Although the student was known to Mr. Torres, his identity was not reported at trial.
Despite a contemporaneous hearsay objection at trial, Mr. Torres was permitted *1044 to testify that the student contended S.H. was in possession of a firearm on school grounds. Mr. Torres further testified that the student informed him that S.H. had the firearm in the school bathroom. The student then showed Mr. Torres photographs depicting S.H. and other students in the bathroom with the firearm. However, Mr. Torres was not certain as to whether S.H. was holding the firearm in the photographs.
Officer Perez made efforts to locate S.H. on the campus, but discovered that his mother had signed him out of school. The principal of the school directed Mr. Torres to contact S.H.'s mother. Mr. Torres made contact with S.H.'s mother and informed her of the report regarding the firearm. He further requested that she return S.H. to the school. S.H. and his mother returned to the school within fifteen or twenty minutes of receiving the telephone call. Mr. Torres and Officer Perez went to the office and observed S.H. seated near his mother. Mr. Torres observed a backpack on a nearby chair. Officer Perez immediately opened the backpack and discovered a semi-automatic firearm in the main compartment. He also observed various books and folders in the backpack. S.H. confirmed ownership of the backpack. Officer Perez secured the firearm by removing both the magazine clip and a bullet from the chamber of the firearm. He then extracted six additional rounds from the magazine. Mr. Torres observed the firearm "matched" the firearm depicted in the bathroom photographs. S.H. was placed under arrest.
Officer Perez read S.H. his Miranda [1] rights, per card. S.H. waived his rights and told Officer Perez he had been bullied at school previously, thus he brought the firearm to school for protection. He further stated that he acquired the firearm from his father. School attendance records were moved into evidence and reflected that S.H. attended school that day, but was excused early by his mother.
LEGAL ANALYSIS
a. Best Evidence
S.H. claims error with regard to testimony concerning the contents of the photographs. In order "[t]o meet the objectives of any contemporaneous objection rule, an objection must be sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal." Castor v. State, 365 So.2d 701, 702 (Fla. 1978) (citing Rivers v. State, 307 So.2d 826 (Fla. 1st DCA 1975), cert. denied, 316 So.2d 285 (Fla.1975) ); see also York v. State, 232 So.2d 767 (Fla. 4th DCA 1969). As the Florida Supreme Court has explained:
This requirement is "based on practical necessity and basic fairness in the operation of a judicial system." The rule "not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage."
Insko v. State, 969 So.2d 992, 1001 (Fla. 2007) (internal citations omitted).
In the instant case, the transcript reveals the following exchange with regard to the contents of the photographs:
Q: And did you in fact see these photographs?
A: I saw the photographs, yes.
Q: And do you recall what the photographs depicted?
A: I believe they were just in the bathroom, they were holding it and possibly, *1045 you know, it's a little vague, it's a while ago, but I know it was urgent enough for me to report it to the [p]rincipal; you know what I mean.
Q: Did the photograph show the Respondent holding a firearm?
[Defense counsel]: Objection, leading.
[Trial court]: Overruled.
Q: That I don't remember.
Q: Was the Respondent in the photograph?
A: He was in some photographs, yes, with a group of kids.
Q: With a firearm present?
A: With a firearm present, yes.
Q: Do you know where the photograph was taken?
A: In a bathroom area in our school.
Q: And you're certain that the bathroom area was inside of your school?
A: Yes, yes, that's for sure.
Q: And how are you certain about that?
A: Well I've been working there for 27 years; I'm pretty familiar with the building. And our bathrooms actually at that time were under construction so you can see some of the construction in the background of the bathrooms.
Q: Okay. So based on what you just described what did you do next?
A: I reported it to our School Resource Officer and to our Principal of the school.
Q: Okay. And then what did you do?
A: The School Resource Officer came in -
[Defense counsel]: Objection, best evidence rule. May we please go sidebar?
[The court]: Overruled. You may continue.
A: The School Resource Officer came in and we went to go see if S. was in class or in the building, just like our normal procedures we would do.
Thus, the only contemporaneous objection made during the testimony regarding the contents of the photographs was that the interrogatory in question was leading. It was not until after the State fully elicited testimony regarding the contents of the photographs and moved on to other areas of inquiry that S.H. interposed a best evidence objection. As such, the objection was not specific and contemporaneous, as required, and we conclude the issue has not been properly preserved for appellate review. See Steinhorst v. State, 412 So.2d 332, 336 (Fla. 1982) ("Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").
b. Corpus Delecti
S.H. further claims error in the admission of his statements, without sufficient alternative proof, as required pursuant to the common law doctrine of corpus delecti, or the "corroboration rule." We review the trial court's admission of a confession over a corpus delicti objection for an abuse of discretion. See Tanzi v. State, 964 So.2d 106, 116 (Fla. 2007) ; Hathaway v. State, 228 So.3d 620 (Fla. 1st DCA 2017) ; J.B. v. State, 166 So.3d 813, 816 (Fla. 4th DCA 2014).
The term corpus delecti has been defined as "[t]he corroborating evidence that shows that a crime has been committed, other than a confession or an alleged accomplice's statement." Corpus Delecti , The American Heritage Dictionary of the English Language (5th Ed. 2016). "The corpus delicti rule is not one of constitutional magnitude, nor is it statutorily mandated. It is a common law, judicially created, rule of evidence, the purpose of which is to ensure that a person will not be *1046 convicted based solely on his own false confession to a crime that never occurred." Gonzales v. State, No. AP75540, 2009 WL 1684699 (Tx.Crim.App. June 17, 2009) (Cochran, J., concurring), cert. denied, 559 U.S. 942, 130 S.Ct. 1504, 176 L.Ed.2d 118 (2010).
"Early versions of the rule developed in 17th-century England when a series of suspects confessed to murders, only to have their alleged victims turn up-alive and well-long after the suspects were imprisoned (or, worse, executed) for the fictitious crimes." U.S. v. Brown, 617 F.3d 857, 860 (6th Cir. 2010) (citing Thomas A. Mullen, Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession, 27 U.S.F. L. Rev. 385, 399-401 (1993) (citing Perry's Case, 14 How. St. Tr. 1311 (1660) ) ). "Many times such confessions were induced by fear of the multitude, sometimes by a sense of grandeur, the desire to attract attention and the like." State v. Cosby, 110 Ohio App. 222, 228, 162 N.E.2d 126, 130 (8th Dist. 1959).
One oft-reported seventeenth-century English decision known as "Perry's Case" involved a false confession culminating in multiple executions. Perry's Case and the genesis of the corroboration rule under the English common law have been described by the Virginia Supreme Court in the following manner:
In 1660, John Perry was subjected to continuous and repeated questioning as to the disappearance of his master, William Harrison. After initially denying all wrongdoing, Perry finally confessed that he, his mother, and his brother had together robbed and murdered Harrison. Although a body was never found, and Perry's mother and brother denied all wrongdoing, all three suspects were convicted and executed on the strength of Perry's confession. Several years later, however, Harrison returned home, claiming to have been kidnapped and sold into slavery in Turkey. In short, Perry had admitted to a falsehood resulting in the execution of himself, his mother, and his brother. See Perry's Case (1660), 14 Howell St. Tr. 1312, 1312-24 (Eng.).
The injustice of Perry's Case and similar cases triggered the creation of the corpus delicti rule, although the corpus delicti rule is not uniformly applied as part of the English common law. Opper v. United States, 348 U.S. 84, 90 & n. 5, 75 S.Ct. 158, 99 L.Ed. 101 (1954) ("[English] courts have been hesitant to lay down a rule that an uncorroborated extrajudicial confession may not send an accused to prison or to death."); 7 John H. Wigmore, Evidence in Trials at Common Law § 2070, at 508-10 (James H. Chadbourn ed., 1978).
Allen v. Virginia, 287 Va. 68, 73, 752 S.E.2d 856, 859 (2014).
One of the earliest reported decisions attributed to the development of the corpus requirement under American law involved the trial of Stephen and Jesse Boorn for the death of Russell Colvin. The case is cited in various treatises and has been described in the following manner:
[A]ter pressure from the multitude, the defendants were indicted and tried some five years after the supposed death of Colvin. The case was tried and a judgment of guilty was entered on circumstantial evidence and confessions of the defendants. Before the sentences of death were executed, the supposed deceased was returned to the jurisdiction of the court trying the case whereupon the defendants were discharged.
Crosby, 110 Ohio App. At 229, 162 N.E.2d at 130 (citing 6 American State Trials, page 73 (1819) Vermont); see also *1047 State v. Madorie, 156 S.W.3d 351, 354 (Mo. 2005) ("By the end of the 19th century, almost every jurisdiction in the United States adopted some form of a corroboration requirement for all crimes.").
In Florida, few early judicial opinions clearly delineate the requirements of the corroboration rule. Nonetheless, in its learned decision rendered in Sciortino v. State, 115 So.2d 93, 99 (Fla. 2d DCA 1959), the Second District Court of Appeal set forth the following principles with regard to evidentiary sufficiency in cases involving extrajudicial confessions:
1. It must be shown that the specific crime charged has been committed.
2. It is not necessary that the corpus delicti be proved beyond a reasonable doubt in order to introduce a confession or admission.
3. The confession should not be received in evidence unless there is some prima facie proof of the crime charged.
4. The specific crime charged must be prima facie established and it cannot be inferred that because some crime was committed that the specific crime involved in the prosecution took place.
5. When the corpus delicti has been prima facie proved by either prositive or substantial evidence, the confessions of the defendant are admissible and may be considered and weighed together.
(internal citations omitted). The Florida Supreme Court articulated a similar set of concepts in State v. Allen, 335 So.2d 823, 825 (Fla. 1976). There, the court stated:
It is a fundamental principle of law that no person be adjudged guilty of a crime until the State has shown that a crime has been committed. The State therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another. This usually requires the identity of the victim of the crime. A person's confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime. The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication.
Expounding upon the "substantial evidence" language utilized in many decisions, the court clarified the burden as follows:
[The corpus delecti principle] obviously does not require the state to prove a defendant's guilt beyond a reasonable doubt before his or her confession may be admitted. Indeed, as this Court has stated before, it is preferable that the occurrence of a crime be established before any evidence is admitted to show the identity of the guilty party, even though it is often difficult to segregate the two. The state has a burden to bring forth "substantial evidence" tending to show the commission of the charged crime. This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime.
Id.; see also State v. Walton, 42 So.3d 902 (Fla. 2d DCA 2010). It is axiomatic that the requisite corroboration "may be established by direct or circumstantial evidence." Price v. State, 776 So.2d 1100, 1101 (Fla. 5th DCA 2001).
In the instant case, the evidence established that S.H. was a minor and, on the day of the incident, was indeed on school grounds. Mr. Torres viewed a photograph depicting S.H. in the school bathroom in the presence of a firearm. S.H. left school early. S.H. returned to the school with his mother after his mother was contacted *1048 by Mr. Torres. Upon his return, S.H. sat in the school office in close proximity to a backpack containing various school-related materials. When Officer Perez and Mr. Torres entered the office, S.H. and his mother were alone in the office with the backpack. S.H. confirmed his ownership of the backpack. A loaded semi-automatic firearm with a bullet in the chamber was discovered in the backpack. Under this factual scenario, the State put on substantial evidence, independent of S.H.'s confession, sufficient to show that S.H. was a minor willfully and knowingly in possession of a firearm on the property of a school on the day charged in the petition for delinquency. Thus, the trial court did not abuse its discretion in finding the corpus delicti and admitting S.H.'s confession.
c. Inadmissible Hearsay
With regard to the admission of the contents of the anonymous tip, the State properly concedes error. See Walker v. State, 77 So.3d 890 (Fla. 2d DCA 2012) (error to admit evidence that an anonymous witness supplied information regarding the identity of the perpetrator); Alvarez v. State, 792 So.2d 1255, 1257 (Fla. 3d DCA 2001) (holding that the admission of testimony relating to the contents of an anonymous tip constituted reversible error); Stribbling v. State, 778 So.2d 452, 453-55 (Fla. 4th DCA 2001) (holding that investigating detective's testimony that he first obtained information about the perpetrator the day after the murder when he received a telephone message leaving the defendant's name constituted inadmissible hearsay); Fluellen v. State, 703 So.2d 511, 512 (Fla. 1st DCA 1997) ("The trial court erred in permitting the arresting officers to testify that they were acting pursuant to an anonymous tip that a described individual was selling drugs, as this testimony constituted inadmissible hearsay."), citing State v. Baird, 572 So.2d 904 (Fla. 1990) (holding that the best practice is to allow an office to State that he or she acted upon a "tip" or "information received" without going into the details of the accusatory information).
In Petion v. State, 48 So.3d 726 (Fla. 2010), the Florida Supreme Court considered the effect of improperly admitted evidence during a bench trial. The court initially noted that "[t]he initial presumption that a trial court has disregarded inadmissible evidence during a non-jury trial is well established in Florida." Id. at 730. But, upon a closer analysis, the court further found: "It is logical and practical that the presumption must be overcome where a trial court judge admits evidence over objection, because the judge would understandably believe that the evidence is properly before the court for consideration." Id. at 737. Thus, the court expressly rejected the initial presumption in such cases, concluding:
When an appellate court is reviewing a bench trial, it should presume that the trial court judge rested its judgment on admissible evidence and disregarded inadmissible evidence, unless the record demonstrates that the presumption is rebutted through a specific finding of admissibility or another statement that demonstrates the trial court relied on the inadmissible evidence. When improper evidence is admitted over objection in this context, the trial court must make an express statement on the record that the erroneously admitted evidence did not contribute to the final determination. Otherwise, the appellate court cannot presume the trial court disregarded evidence that was specifically admitted as proper. In addition, the appellate court still must conduct a harmless error analysis to determine whether there is a reasonable possibility that the *1049 challenged error affected the final judgment. This harmless error analysis is necessary to prevent reversals based on the admission of inconsequential or immaterial evidence, which can sometimes occur during a bench trial for the purposes of expediency and conservation of judicial resources.
Id. at 737-38. As articulated in Petion, the improper admission of the inadmissible hearsay is subject to a harmless error analysis. See, e.g., White v. State, 76 So.3d 335, 343 (Fla. 3d DCA 2011) ; Alvarez, 792 So.2d at 1258.
Here, the trial judge did not articulate reliance upon the contents of the tip in orally pronouncing factual findings. Moreover, the contents of the tip were referred to in a fleeting and isolated manner. Thus, we find that this is a case "[w]here the proof of guilt is so convincing that a person would clearly have been found guilty even without collateral evidence introduced in violation of the evidence code, [thus] the violation of the code may be considered harmless." Petion, 48 So.3d at 735. See also, R.M.O. v. State, 152 So.3d 697 (Fla. 4th DCA 2014) (applying a harmless error analysis when reviewing improperly admitted evidence in a bench trial and affirming in light of ample evidence).
For the aforestated reasons, we affirm the adjudication of delinquency and disposition entered by the trial court.
Affirmed.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).