620 So.2d 180 (1993)
William Thomas CONLEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 79278.
Supreme Court of Florida.
May 20, 1993.
Rehearing Denied June 23, 1993.
*181 Nancy A. Daniels, Public Defender and Glen P. Gifford, Asst. Public Defender, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
BARKETT, Chief Justice.
We have for review Conley v. State, 592 So.2d 723 (Fla. 1st DCA 1992), based on direct and express conflict with various decisions *182 of this Court and the District Courts of Appeal.[1] For the reasons stated below, we reverse the convictions, vacate the sentences, and remand for proceedings consistent with this opinion.
Evidence adduced at trial was fully detailed in the decision under review.[2] Conley was convicted of armed burglary, three counts of sexual battery with a deadly weapon, and armed robbery with a firearm. The First District Court of Appeal affirmed the convictions.[3] Because some of Conley's claims with respect to the guilt portion of the proceedings are dispositive, we address only those issues here.
The first claim of conflict concerns Conley's argument that the trial court erroneously admitted into evidence the hearsay testimony of a police dispatch report. The report originated when an unidentified person, not the alleged victim, called the police to report an incident. Officer Brown testified, over objection, that he "received the call in reference to a man chasing a female down the street." Then he added: "The man supposedly had some type of gun or rifle." The prosecutor later referred to this statement in closing argument to argue that the alleged victim's testimony, combined with the corroborating testimony of Officer Brown, proved that Conley carried a rifle during the criminal episode.
The district court affirmed, holding that the dispatcher's statement introduced through Officer Brown was admissible because it was merely offered to prove why the officer went to the scene to investigate. 592 So.2d at 727. The district court relied on Johnson v. State, 456 So.2d 529 (Fla. 4th DCA 1984), review denied, 464 So.2d 555 (Fla. 1985), a broadly worded opinion that essentially established a per se rule that the contents of a police dispatch are not hearsay and are admissible through another officer's testimony because such evidence is "a common sense way to explain why the officers were at the particular place at the particular time, their purpose in being there and what they did as a result." 456 So.2d at 530.
We agree with Conley's contention that the decision below is in error and conflicts with our subsequent decision in State v. Baird, 572 So.2d 904 (Fla. 1990), and with an en banc decision of the Fourth District, Harris v. State, 544 So.2d 322 (Fla. 4th DCA 1989).
In Baird, we held that the inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information only to establish the logical sequence of events outweighs the probative value of such evidence. Accordingly, we found inadmissible an out-of-court statement explaining the motive of an officer in investigating a defendant where it was not a material fact in issue at the time the challenged testimony was elicited. Our decision approved the rationale of Harris, where the Fourth District, sitting en banc, revisited the rule its panel had set in Johnson. Harris concluded that while police may testify that they arrived on the scene because of a statement made to them, the content of that statement is inadmissible, especially where it is accusatory. In so holding, Harris expressly receded from Freeman v. State, 494 So.2d 270 (Fla. 4th DCA 1986), which had relied on Johnson to approve the admissibility of police testimony revealing an accusatory statement that an informant had made to them.
In the trial court below, the State argued in closing that Officer Brown's testimony about the weapon helped to prove that Conley used a rifle to commit the offenses of armed burglary, armed sexual battery, and *183 armed robbery. Regardless of the purpose for which the State claims it offered the evidence, the State used the evidence to prove the truth of the matter asserted.[4] In so doing, the statement constituted hearsay and fell within no recognized exception to the rule of exclusion. See § 90.803, Fla. Stat. (1989).[5]
Even if we were to conclude that the testimony was not used to prove the truth of the matter asserted, the contents of the statement were not relevant to establish a logical sequence of events, nor was the reason why officers arrived at the scene a material issue in the case. See Baird; Harris. As we said in Baird, the inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information to establish the logical sequence of events outweighs the probative value of such evidence. Such practice must be avoided. Baird, 572 So.2d at 908; see § 90.403, Fla. Stat. (1989).
In light of the lack of corroboration as to whether Conley used a firearm, combined with evidence that contradicted the alleged victim's statements on this issue as more fully explained in this opinion below, we cannot say beyond a reasonable doubt that the jury's result would have been the same without Officer Brown's improper hearsay testimony. Thus, we find the error harmful, requiring reversal. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In this case the error was compounded by the erroneous admission of a hearsay statement about the rifle that the alleged victim made to the examining physician while detailing her claim of sexual battery. Dr. Turner, a resident at the University Hospital emergency room, was called by the State to testify about his examination of the alleged victim. When the State asked Dr. Turner what she had told him, Conley objected on the ground of hearsay. The trial court overruled the objection in favor of the State's argument that the evidence, although hearsay, was admissible under the medical diagnosis exception codified in section 90.803(4), Florida Statutes (1989).[6]
Dr. Turner testified that he examined the woman immediately after the incident and filled out a form routinely used for this type of exam. Then he described what she told him:
The patient stated that approximately 2:00 in the morning in the home of a patient of hers she was allegedly raped, assaulted, which included penile, oral, penile/vaginal, and penile/anal intercourse. This was done, as she stated, at gunpoint.

There was also some question of violence that had occurred at that time in terms of her being struck by her assailant.
(Emphasis supplied.) He said she did not know whether the assailant had ejaculated. From this information, he decided to conduct anal, vaginal, and oral examinations and to check for evidence of sperm.
On review, the District Court found no abuse of discretion. We disagree and find that the District Court's application of section 90.803(4) conflicts with our holding in Torres-Arboledo v. State, 524 So.2d 403, 407 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). There, *184 an examining physician testified that the victim said "a couple of black people tried to steal his medal and shot him." We held that the portion of the statement about having been shot was admissible under section 90.803(4) because it was reasonably pertinent to the diagnosis or treatment of the victim's wounds. But, we held, the statement that black people tried to steal the victim's medallion was not admissible because it was not reasonably pertinent to medical treatment.
The same analysis applies here. The alleged victim's statement to the doctor that she had been sexually assaulted orally, vaginally, and anally were reasonably pertinent to the physician's diagnosis or treatment of the victim's wounds. However, we agree with Judge Ervin's dissent that the "assault at gunpoint" portion of the statement was inadmissible because it was not reasonably pertinent to medical treatment. See Conley, 592 So.2d at 733 (Ervin, J., dissenting).[7]
The issue of whether Conley possessed and used a rifle during this alleged criminal episode was a significant and contested issue bearing on each of the crimes being tried  armed burglary, armed sexual assault, and armed robbery. The alleged victim had testified that Conley shot the rifle into the ceiling of the bedroom where she said the assault took place, yet police found no evidence that a weapon had been fired. Nor did the State produce any admissible corroborating evidence on this issue. Dr. Turner's hearsay evidence of the alleged victim's own statement, and Officer Brown's hearsay statement from an unidentified third party, were the only evidence supporting the woman's charge that Conley held or used a rifle during the episode. The State did present evidence that Conley had been hunting with a rifle earlier that day and was arrested lying under a bed with a rifle at his side. However, Conley gave what some jurors may consider a reasonable explanation for why he was later found with a rifle at his side.[8]
Without the inadmissible hearsay corroboration, jurors might have weighed the alleged victim's testimony about the rifle differently. This might have not only produced reasonable doubt on the "armed" portion of all five counts, but it also might have impacted her credibility in general. Attacking her credibility was the linchpin of Conley's defense. Had jurors not accepted her testimony about the weapon, they might have given less weight to other portions of her testimony, too.[9]
We hasten to note that the State is not required to corroborate a victim's testimony. However, where the key witness's credibility has been put in issue, it cannot be doubted that corroborating testimony may play a substantial role in the jury's weighing of the evidence.
Accordingly, we quash Conley, approve Harris, and disapprove Johnson and Freeman to the extent they are inconsistent with Baird and this decision. The convictions are reversed, the sentences vacated, and this cause is remanded for proceedings consistent with this opinion.
It is so ordered.
*185 OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
The majority errs in reversing Conley's convictions and in characterizing the out-of-court statements of the police officer and the doctor as inadmissible hearsay. Officer Isaac Brown testified that he "received the call in reference to a man chasing a female down the street. The man supposedly had some type of gun or rifle." Under basic evidentiary analysis, the statement would be hearsay if it were offered merely to prove that a man with a gun was indeed chasing a female down the street. A review of the transcript, however, clearly reveals the purpose for which the statement was offered. On direct examination, the state attorney asked Officer Brown the following question: "If you can tell the jury, what is the first thing you learned about this crime, and what was the first thing you did in order to further your investigation?" Officer Brown simply replied that he went to investigate a report that someone was being chased down a street by a person with a gun. Officer Brown's statement was offered to establish why the officer went to the scene to investigate. Because his statement was not offered to prove that a man with a gun was chasing a woman, the statement was not hearsay.
Relying on Johnson v. State, 456 So.2d 529 (Fla. 4th DCA 1984), review denied, 464 So.2d 555 (Fla. 1985), the district court affirmed the trial court's decision to overrule Conley's hearsay objection. The issue in Johnson, like the issue in the instant case, concerned the admissibility of an investigating officer's testimony as to the contents of the dispatch. To my regret, the majority dismisses Johnson as a "broadly worded opinion that essentially established a per se rule that the contents of a police dispatch are not hearsay." Majority op. at 182. Johnson did no such thing.
As for the first issue, the officers' testimony as to the contents of the dispatch was allowed to establish that the statements were made, not that they were true. It is a common sense way to explain why the officers were at the particular place at the particular time, their purpose in being there and what they did as a result. We hope this will eliminate any practice, should it exist, of excluding similar testimony in future cases, as jurors have the right to expect to hear a logical sequence, which begins at the beginning.
Id. at 530. Johnson properly recognized that the contents of a dispatch may explain the circumstances that led the officer to pursue an investigative lead.[10]
Certainly there are some are cases in which the content of the dispatch should not be admitted because it is offered to prove the truth of the matter asserted. State v. Baird, 572 So.2d 904 (Fla. 1990); Harris v. State, 544 So.2d 322 (Fla. 4th DCA 1989). For example, in Baird, a law enforcement officer testified that he "had received information that he [Baird] was a *186 major gambler and operating a major gambling operation in the Pensacola area." 572 So.2d at 905. The statement was made in response to the state's question as to whether the officer had targeted Baird for prosecution. Finding the officer's out-of-court statement inadmissible, we stated that the prejudicial effect of admitting an out-of-court statement relating "accusatory information" outweighs the probative value of the evidence if it is admitted only to establish the logical sequence of events. Id. at 908. The officer's testimony included the identity of the person allegedly involved in the circumstances leading to the officer's investigation and it was clearly accusatory.
The facts of the instant case, with respect to the content of the dispatch, differ markedly from Baird. The contents of the dispatch introduced by Officer Brown did not implicate any particular man. The contents of the dispatch did not give any identifying characteristics such as his name, appearance, attire, place of residence, or place of business. Thus, I fail to see how the statement could be accusatory when any reference to Conley is absent.
I also disagree with the majority's conclusion that a portion of the physician's testimony is inadmissible hearsay. The physician testified that the victim was "allegedly raped, assaulted, which included penile, oral, penile/vaginal, and penile/anal intercourse. This was done, as she stated, at gunpoint." Except for the testimony that the assault occurred at gunpoint, the majority concedes that the victim's statements to the physician are admissible under the medical treatment exception set forth in subsection 90.803(4), Florida Statutes (1989). In reaching this conclusion, the majority claims to apply the analysis of Torres-Arboledo v. State, 524 So.2d 403 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). Instead of applying Torres-Arboledo, however, I believe that the majority has distorted its meaning.
In Torres-Arboledo, we held that the medical treatment exception was not broad enough to encompass the victim's statement to a physician that "a couple of black people tried to steal his medal and shot him." Id. at 407. The information elicited from the physician in Torres-Arboledo had no possible bearing on the victim's diagnosis or treatment. Our holding in that case applied the general rule that the medical treatment exception does not include statements of "fault." In the instant case, the physician's testimony did not point the finger at anyone. The testimony merely conveyed that the acts occurred at gunpoint, a fact that the physician may have considered important in providing the victim with medical treatment.
The rationale for the medical diagnosis exception to hearsay is that the declarant's motive of obtaining effective treatment assures the statement's reliability and trustworthiness. The declarant has a self-interest in telling the truth because the type of treatment administered depends on the accuracy of the information the declarant gives to the health care provider. 2 McCormick on Evidence, § 277 at 246-47 (John William Strong, ed., 4th ed. 1992). Under the equivalent medical diagnosis exception in the Federal Rules of Evidence, the term "medical" has been interpreted to include emotional and mental health as well as physical health. See United States v. Cherry, 938 F.2d 748 (7th Cir.1991); United States v. Provost, 875 F.2d 172 (8th Cir.), cert. denied, 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989). In child sexual abuse cases, there is a marked trend toward allowing statements made by victims to their physicians that identified their assailants. People v. Meeboer, 484 N.W.2d 621 (Mich. 1992); Baine v. State, 604 So.2d 249 (Miss. 1992); State v. Nelson, 138 Wis.2d 418, 406 N.W.2d 385 (1987). To protect the child from an abuser who may be a member of the immediate household and to determine the psychological injury that may have resulted as a result of domestic abuse, courts have been willing to broaden the definition of medical diagnosis or treatment. Because of the psychological and emotional trauma that people of any age sustain as a result of sexual abuse, I believe that a victim's non-accusatory statements to a health care provider should *187 not be excluded if they are related to the victim's emotional or mental health. In the instant case, the victim's statement that she was sexually assaulted at gunpoint was nonaccusatory and was directly related to her psychological welfare.
The district court correctly recognized that "what is reasonably pertinent to medical diagnosis or treatment is to be determined from the perspective of the healthcare provider to whom the statement is made rather than the vantage point of an appellate court." Conley, 592 So.2d at 729; Danzy v. State, 553 So.2d 380 (Fla. 1st DCA 1989). When a physician is examining and treating a victim of rape, it is certainly reasonable to expect the physician to evaluate the extent of the psychological or emotional trauma that might accompany the physical injury. Being sexually assaulted at gunpoint is more emotionally traumatic than being assaulted by means of other, less life-threatening manifestations of force. Thus, the physician may be obligated to obtain certain details of a criminal incident in order to determine whether to recommend psychological counseling for the victim.
For the above reasons, I respectfully dissent and would approve the district court's decision.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
[2] Briefly, the State alleged that Petitioner William Thomas Conley, while armed with a rifle, broke into a residence in Jacksonville in November 1989 where the alleged victim had been working as a nurse's assistant. Conley, who had known her before this incident, allegedly forced her to have anal, oral, and vaginal sex with him, and then robbed her. Conley testified and denied all of the allegations.
[3] Conley's sentencing as a habitual violent felony offender was affirmed in part and reversed in part. Because we reverse the convictions and vacate the sentences, we need not discuss the sentencing portion of the district court's opinion.
[4] The district court distinguished this issue as two separate claims, one as to Officer Brown's statement, which was objected to, and another as to the prosecutor's closing argument about Officer Brown's testimony, which was not objected to. We see no need to draw this distinction. The error was committed when Officer Brown's statement was admitted over objection. The prosecutor's remarks compounded the error and shed light on the purpose for which the evidence was introduced.
[5] Arguably this was double hearsay because the dispatch report allegedly repeated what an unidentified caller had told the police dispatcher.
[6] Section 90.803(4), Florida Statutes (1989) provides for the admission of:

Statements made for the purposes of medical diagnosis or treatment by a person seeking the diagnosis or treatment ... which statements describe medical history, past or present symptoms, pain, or sensations, or the inceptions or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment.
[7] In addition to the errors found here, the district court also found error in two portions of the prosecutor's closing argument. First, the district court held that the prosecutor improperly inflamed the jury, accused Conley and/or defense counsel of further victimizing the alleged victim by exercising his right to trial, and improperly criticized the defense for attacking her credibility. Conley v. State, 592 So.2d 723, 730-31 (Fla. 1st DCA 1992). The district court also found error when the prosecutor argued his personal beliefs about the accused's guilt and credibility. Id. at 731. These actions further compounded the evidentiary errors committed in this case. We do not comment on the merits of any other issues raised here or below.
[8] We express no opinion as to whether or not we accept this explanation.
[9] We note that portions of the alleged victim's testimony were corroborated by independent evidence. For instance, police found in Conley's possession some of the items she said he had stolen. However, we also note that physical evidence testified to by Dr. Turner did not corroborate testimony about the manner of the alleged sexual batteries, and there was no physical evidence of a gunshot to corroborate her testimony about the rifle. Furthermore, her testimony about not having had an ongoing sexual relationship with Conley prior to this incident was challenged by various defense witnesses.
[10] The majority emphasizes that in State v. Baird, 572 So.2d 904 (Fla. 1990), this Court approved the rationale of Harris v. State, 544 So.2d 322 (Fla. 4th DCA 1989). Harris receded from Freeman v. State, 494 So.2d 270 (Fla. 4th DCA 1986), which had relied on Johnson v. State, 456 So.2d 529 (Fla. 4th DCA 1984), review denied, 464 So.2d 555 (Fla. 1985), to approve the admissibility of police testimony involving an informant's statement. Baird and Harris recognize the potential for abuse where an officer's out-of-court statement is used to show the logical sequence of events. However, Baird and Harris did not overrule cases like Johnson that allowed testimony relating to the contents of a dispatch, but simply cautioned against allowing such testimony to be used overbroadly. "We agree with the Fourth District Court of Appeal in Harris ... that when the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to an arrest, the need for the evidence is slight and the likelihood of misuse is great." Baird, 572 So.2d at 908 (emphasis supplied). If there is a threat that the statement might have a prejudicial effect, then that prejudicial effect "generally can be limited by giving instructions cautioning the jury as to the limited use of the testimony." Id. at 906. Had an objection to the state attorney's argument been made, the trial judge could have made an appropriate instruction.