WOLF, Judge,
dissenting.
The wrongful admission of statements made by the victim to the treating physician which were not reasonably pertinent to medical treatment was harmless in light of the overwhelming independent evidence presented which supports the victim’s allegations.
In Conley v. State, 620 So.2d 180 (Fla.1993), the supreme court determined that admission of statements made by a sexual assault victim concerning the assault which were not “reasonably pertinent to the physician’s diagnosis and treatment” constituted error. The court further determined that in light of the lack of corroboration of the victim’s testimony and physical evidence which was inconsistent with the victim’s allegations (no evidence of rifle shot in ceiling), the wrongful admission of the evidence was not harmless. In the instant case, as in Conley, certain statements made by the victim to the treating doctor were improperly admitted into evidence (most notably, the statements relating to use of the shotgun during the offense). In the instant case, however, there is overwhelming testimony and physical evidence which demonstrates not only appellant’s commission of the sexual assault, but use of a.firearm during the commission of the crime.
The pertinent evidence in the instant case is as follows:
1. The victim was seen by several police officers several minutes after the crime driving 'a car with several windows blown out.
2. The victim, while still visibly upset (evidenced by the fact that she stopped the car in the middle of the street when she saw the police officers, ran over to them, and she was sobbing), told basically the same story to the police officers as that to which she testified at trial.
3. The officer’s investigation of the crime scene was consistent with the victim’s assertions.
a. Police found broken glass and tire tracks at the scene of the crime.
b. The police evidence technician uncovered two shotgun waddings inside the vehicle.[3]
c. The technician also found shotgun pellets inside the car.
d. Two officers testified without objection that there was a hole in the front passenger seat that was made by a shotgun.
4. Testimony revealed that earlier that evening, defendant was looking for a gun which he could borrow.
5. One witness testified, and defendant admitted during his testimony, that the defendant owned a sawed-off shotgun similar to the one described by the victim.
6. A friend of both the defendant and the victim testified that he saw the victim and the defendant driving in the car with the defendant behind the victim, and that the car did not stop even though they saw Mr. Coleman. (The victim asserted that appellant was behind her in the car with a gun prior to the assault. Defendant asserted that at all times the parties were in the front seat together).
7. The defendant attempted to avoid arrest by hiding under a bed when police arrived because he was scared of being found guilty.
8. Defendant gave inconsistent statements to the police concerning the event, initially denying even having sex with the victim until confronted with physical evidence that the victim had engaged in intercourse.
9. Defendant’s testimony failed to reasonably explain why victim would lie or how the car glass was broken. Defendant also denied sitting behind the victim, in contradiction of Coleman’s testimony.
*330 10. Victim’s underwear was torn.
In light of the foregoing, I believe it was demonstrated, beyond a reasonable doubt, that the error did not affect the jury’s verdict. I would affirm. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).

. “It's part of the shotgun shell that goes inside of the shotgun itself. Between the pellets and the powder. And when the gun is fired, the wadding comes out of the end of the barrel with the pellets.”