970 A.2d 320

**Kelvin PARKER a/k/a Calvin Parker**

v.

**STATE of Maryland.**

**No. 89, Sept. Term, 2008.**

Court of Appeals of Maryland.

May 4, 2009.

Mark Colvin, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for Appellant.

Carrie J. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Baltimore), on brief, for Appellee.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

This case illustrates the risk inherent in admitting an informant's statement implicating the defendant through the testimony of a police officer, purportedly for a non-hearsay purpose. The trial court allowed a police detective to testify at a

jury trial that he received a tip from a confidential informant that a black male wearing a blue baseball cap and a black hooded sweatshirt was selling heroin at a particular intersection. Appellant Kelvin Parker was convicted by a jury of possession of heroin and sentenced to four years imprisonment. We shall hold that the testimony was inadmissible hearsay because it contained too much specific information about the defendant and his criminal activity to be justified by the proffered non-hearsay purpose of establishing why the detective was at the intersection. Because its admission into evidence was not harmless, we shall reverse the judgment below and remand the case for new trial.

## FACTS AND LEGAL PROCEEDINGS

On the morning of November 2, 2006 at approximately 10:30, Detective David McGowan of the Baltimore City Police Department was working in plain clothes in an unmarked vehicle near the intersection of Carey and Laurens Streets. McGowan described the area as "an open air drug market" and a "heroin shop." He said that he was at the location because of a telephone call he had received from one of his registered confidential informants. McGowan testified, over Parker's objection, that the informant told him that a black male wearing a blue baseball cap and black hooded sweatshirt was "at the corner of Carey and Laurens selling heroin from his person, meaning the drugs were on him."

McGowan related that once he arrived in the area, he began making observations from a covert location "[a]bout a half a city block" from the corner of Carey and Laurens. He observed a black male wearing a blue baseball cap and a black hooded sweatshirt—later identified as Mr. Parker—walking around at the intersection of Carey and Laurens. McGowan indicated that he observed Parker for twenty to thirty minutes. He watched Parker walk into a corner liquor store and "within a couple of seconds two unknown males followed him into the liquor store." The two unknown individuals were inside the liquor store for "maybe five to ten seconds" and then walked out empty-handed and left the area.

McGowan indicated that before these two men entered, he had seen "about four to five other individuals walk in the store" and "walk right back out with no packages in hand." McGowan explained that based upon his experience, "individuals who are engaged in illegal narcotics activity will utilize these corner stores, these Chinese stores, these carryouts, whatever they might be, ... to conceal what they're doing[.]" He then expressed his expert opinion that "Mr. Parker was engaged in illegal narcotic activity."

According to McGowan, Parker walked out of the store and walked westbound on Laurens Street. McGowan lost sight of Parker for a brief period, but then saw Parker by the Capital Cake Company. McGowan and two other detectives who were with him, Detectives Ott and Maurice, pulled up next to Parker in their vehicle and got out. The detectives were in plain clothes, but were wearing badges on the outside of their garments. Parker did not run when McGowan approached, but according to McGowan, Parker said, "Oh shit."

McGowan recovered three gel caps of heroin out of Parker's right rear pants pocket and an additional thirteen gel caps of heroin in a small incision in the seam of his waistband. Each of the gel caps was worth $10. The detectives also recovered $82 from Parker's person, including one $20 bill, two $10 bills, six $5 bills, and twelve $1 bills. Based on the denominations of money, McGowan believed the bills were proceeds from the sale of eight gel caps. McGowan testified that the drugs were never fingerprinted "because [he] recovered them directly from the person of Mr. Parker or his possession."

On cross examination, McGowan first testified that Parker went into the store for "several brief seconds." When defense counsel showed him the statement of probable cause, however, McGowan acknowledged that he then wrote that Parker went into the store for "several minutes." McGowan also admitted that: during his investigation he never went inside the liquor store; the two unknown men he observed were not stopped;

there was no blue light camera [1] at that intersection; he could not recall how many other people were present on the street outside of the Capital Cake Company; and the pants with the incision were not recovered. Neither of the detectives who were with McGowan was called to testify.

Parker testified that he was in front of the Capital Cake Company about 10:30 in the morning talking to a girl who worked there. About fifteen or twenty minutes later, Parker's friend Warren passed by and spoke to Parker. Parker then picked up his bike and walked with it up the street to the corner liquor store. As Parker got to the liquor store, Warren "and the guy that was with him" were coming out of the store, so Parker "stepped in and stepped right back out." Warren and the person with him then walked across the street, got into the truck Warren was driving, and pulled away.

Parker said that about five minutes later, three white officers in an unmarked tan car who had been sitting "by the bar the whole time" backed up around the corner. McGowan then got out of the car, asked Parker if he had "anything to poke, stick, or stab him[,]" and started searching Parker. According to Parker, McGowan "dropped [Parker's] pants to the ground" but "didn't find anything." While McGowan was searching Parker, one of the other officers was searching two men that he had against the liquor store wall. The third officer went across the street to search the grass. When the third officer returned, he told McGowan that "it's not over there, I don't see it." Parker testified that the officer went over to the grassy area again, returned, and said something to McGowan. Parker was then handcuffed.

On cross examination, Parker denied that McGowan found sixteen vials of heroin on him. He also denied saying "oh shit" to McGowan, and that he told McGowan that he had "a little bit of heroin in my back pocket[.]" In rebuttal, McGow-

---

1. A blue light camera is a closed-circuit surveillance camera utilized by the Baltimore City Police Department that stores and relays images of public areas. A blue light is affixed on the camera.

an testified that after Parker said "oh shit[,]" he asked Parker if he had any illegal narcotics on his person. According to McGowan, Parker replied, "I got a little bit of heroin in my back pocket."

The jury began its deliberations late in the second day of trial and continued their deliberations the next day. After twice reporting itself deadlocked, the jury found Parker guilty of possession of heroin. Parker filed an appeal to the Court of Special Appeals. We issued a writ of certiorari, on our own initiative, to consider the following question:

> Did the trial court err in allowing testimony by Detective McGowan that he received a tip from a registered confidential informant that a black male wearing a blue baseball cap and a black hooded sweatshirt was selling heroin from his person at the corner of Carey and Laurens Streets?

## DISCUSSION

### *The Informant's Extrajudicial Statement*

Parker contends that the trial court erred in allowing testimony by Detective McGowan that he received a tip from a registered confidential informant that a black male wearing a blue baseball cap and a black hooded sweatshirt—later identified as Parker—was selling heroin at the corner of Carey and Laurens streets. This testimony requires reversal, he argues, because (1) it is inadmissible under the Maryland Rules of Evidence, (2) its admission violated his confrontation rights under the Sixth Amendment to the U.S. Constitution and Article 21 of the Maryland Declaration of Rights, and (3) its admission was not harmless beyond a reasonable doubt. Parker offers two related evidentiary grounds for the statement's inadmissibility—hearsay and relevancy:

> [T]he informant's statement to Detective McGowan was clearly inadmissible hearsay if offered to prove the truth of the matter asserted, and, if offered "to show why Detective McGowan was there," . . . the probative value (if any) of the informant's statement was far outweighed by the danger of

unfair prejudice because of the strong likelihood that the jury would misuse the information and treat it as additional substantive evidence of Mr. Parker's guilt.

The State asserts that the trial court acted within its discretion in admitting the confidential informant's statements. The State maintains that it made clear to the court in a pre-trial motions hearing that it intended to introduce the confidential informant's statement to explain why McGowan "was there and what, if any, actions [he] took." It argued that the statement was not being offered "for the truth of the matter." The motions court deferred its ruling on the evidence until its introduction at trial.

At trial, Parker objected when the State asked McGowan during direct examination, "Do you remember why on November 2nd you were called to that 1200 block of Laurens Street?" At the ensuing discussion at the bench, Parker expressed his concern that "this jury is going to hear hearsay." The State then re-asserted its reason for offering the statement: "it's just to show the [effect] on the listener. It's non-hearsay. It's to show why Detective McGowan was there. It's not a confrontation clause argument." The trial court then over-ruled Parker's objection "based on [the State's] representation that it's not being offered to prove the truth of the matter asserted as to the confrontation clause[.]"

██ "[T]his Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993). Because we shall hold that the trial court committed reversible error in admitting the confidential informant's extrajudicial statement under our laws of evidence, we will not address Parker's contentions based upon the Confrontation Clauses of the Sixth Amendment to the U.S. Constitution and Article 21 of the Maryland Declaration of Rights. *See Graves v. State*, 334 Md. 30, 38, 637 A.2d 1197, 1201 (1994)(declining to address the defendant's right of confrontation arguments when reversing the judgment on state evidentiary grounds).

 Under Maryland Rule 5–801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

> The threshold questions when a hearsay objection is raised are (1) whether the declaration at issue is a "statement," and (2) whether it is offered for the truth of the matter asserted. If the declaration is not a statement, or if it is not offered for the truth of the matter asserted, it is not hearsay and it will not be excluded under the hearsay rule.

*Stoddard v. State*, 389 Md. 681, 688–89, 887 A.2d 564, 568 (2005). Maryland Rule 5–802 states that "[e]xcept as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible." We discussed the standard of review for hearsay rulings in *Bernadyn v. State*, 390 Md. 1, 7–8, 887 A.2d 602, 606 (2005):

> We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802. Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*.

(Citation omitted.)

 In arguing that the confidential informant's statements were admissible for a non-hearsay purpose, the State invokes the evidentiary rules on relevancy. Maryland Rule 5–402 provides that "[e]vidence that is not relevant is not admissible." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–

401. Under Rule 5–403, however, evidence may be excluded, though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"

Our standard of review on a relevancy question depends on whether the "ruling under review was based on a discretionary weighing of relevance in relation to other factors or on a pure conclusion of law." *J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002). "When the trial judge's ruling involves a weighing, we apply the more deferential abuse of discretion standard." *Id.* When the trial judge's ruling involves a legal question, however, we review the trial court's ruling *de novo*. *Id.* The trial court's conclusion that the informant's statement was not being offered to prove the truth of the matter asserted is a hearsay ruling. Thus, we review the statement's admissibility *de novo*.

In *Graves*, 334 Md. at 33–34, 637 A.2d at 1199–200, we considered the admissibility of an extrajudicial statement made to the arresting officer by an individual arrested for having assaulted two men. One of the victims, Derek Jones, was sitting on the steps of a store, waiting for a bus, when two men approached. One of the men pulled out a gun and said, "Don't move." The victim's father, David Jones, witnessed the incident, crossed the street toward Derek, and asked Derek "what the trouble was." When the two men looked at David, Derek pushed the gun away and ran. The two assailants then walked away. When the police arrived, Derek gave a description of one of the men and the police eventually arrested Kenneth Trusty, who told the arresting officer, John Reynolds, that Graves had been his accomplice. Graves was charged with assault upon Derek and David and attempted robbery of Derek with a dangerous and deadly weapon. A jury convicted Graves of both assault charges but acquitted him of attempted robbery.

At trial, Trusty was not called as witness to testify against Graves. Instead, the trial court permitted Officer Reynolds to

testify on direct examination that when Trusty was arrested, Trusty told him that the other individual involved was Graves:

"Q [Prosecutor]: Did you have an opportunity to talk to [Trusty]?

A [Reynolds]: Yes.

Q And about what did you talk to him?

A About the other individual.

Q Which other individual?

A The one that was still at large.

Q Did he give you a name—?

[Defense counsel]: Objection.

THE COURT: Overruled.

A Yes. He said his name was Michael Graves.

Q What did you do with the name?

A I recorded it in my small—I carry a small notebook with each date of when I work and my car number and I recorded the name."

*Id.* at 35, 637 A.2d at 1200. The notebook was also admitted into evidence over Graves's hearsay objection.

Graves contended that the testimony in which Trusty was said to have named Graves was a statement made by an out-of-court declarant, offered to prove the truth of the matter asserted. The State responded that the evidence at issue was "not hearsay because it was not admitted for the truth of the matter asserted, but rather, was properly admitted for the limited purpose of showing how the police came to assemble a photographic array containing Graves' picture." *Id.* at 37, 637 A.2d at 1201.

We held that Trusty's extrajudicial statements contained in the officer's testimony and notebook were inadmissible. *Id.* at 42–43, 637 A.2d at 1203–04. We observed the general rule that "a relevant extrajudicial statement is admissible as non-hearsay when it is offered for the purpose of showing that a person relied on and acted upon the statement and is not introduced for the purpose of showing that the facts asserted in the statement are true." *Id.* at 38, 637 A.2d at 1201. This

general rule is frequently applied in criminal cases when police reliance on extrajudicial statements is "relevant on issues of probable cause, lawfulness of arrest and search and seizure where evidence is offered that was obtained as a result of the search for evidence." *Id.* at 38, 637 A.2d at 1202.

We cautioned, however, that the non-hearsay purpose of providing the basis upon which the arresting officer acted is not relevant to the question of a defendant's guilt or innocence and is inadmissible hearsay:

> "[I]n many cases coming before this Court where the lawfulness of an arrest and of a search incidental thereto are in issue, direct evidence to show the basis upon which the arresting officers acted either is not offered at all, or is alluded to guardedly as 'information received' or in some other and equally uninformative manner (doubtless designed to avoid an objection that it is hearsay), or is actually excluded as hearsay. *On the question of the guilt or innocence of the defendant it clearly is hearsay and hence is inadmissible;* but on the issues of probable cause and the lawfulness of arrest and of the admissibility of evidence obtained through any search made in connection with the arrest, such testimony, even if hearsay, is directly relevant and is admissible. Therefore, the determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a preliminary matter quite apart, of course, from the question of the guilt or innocence of the accused; and if the case is being tried before a jury, such a matter should be heard out of the presence of the jury. Such a question may be raised, before trial by a motion to exclude any evidence claimed to have been improperly obtained."

*Id.* at 39, 637 A.2d at 1202 (quoting *Farrow v. State,* 233 Md. 526, 532–33, 197 A.2d 434, 437–38 (1964))(emphasis added). Quoting Professor McCormick, we explained the danger of allowing the jury to hear an arresting or investigating officer's specific basis for his actions:

"In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so 'upon information received' and this of course will not be objectionable as hearsay, *but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay.*"

*Graves*, 334 Md. at 39–40, 637 A.2d at 1202 (citing *McCormick on Evidence* § 248, at 587 (Edward W. Cleary ed., 2d. .ed.1972))(emphasis in original).

We pointed to the Court of Special Appeals decision in *Purvis v. State*, 27 Md.App. 713, 343 A.2d 898 (1975) as an application of this principle. We summarized *Purvis:*

[Purvis's] conviction by a jury of distribution of heroin was reversed because the trial court permitted testimony by an undercover police agent, who had purchased heroin from the defendant, that he decided to attempt to make the purchase because he had been told by a confidential informant that the defendant was selling heroin. The testimony of the agent submitted to the jury the out-of-court declaration of an unknown informant that the defendant was selling heroin. The fact that the defendant was a heroin dealer was the very object that the prosecution had undertaken to establish. Thus, the Court of Special Appeals found the statement to be "of misleading probative force which tended to influence the trier of facts to believe that before Purvis' contact with the officers he was already a dealer in heroin and thus more likely to have sold the drug to the detectives as charged."

*Graves*, 334 Md. at 40, 637 A.2d at 1202 (citing *Purvis*, 27 Md.App. at 725, 343 A.2d at 904). The *Purvis* court concluded that it was error to have admitted the hearsay testimony by the police agent. *Purvis*, 27 Md.App. at 725, 343 A.2d at 905. We reached the same conclusion in *Graves*, viewing this limitation on the admission of extrajudicial statements to

justify police conduct as "in accord with the well-settled rule that the trial court, in its discretion, may exclude relevant evidence if it believes that the probative value of the evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury." *Graves,* 334 Md. at 40, 637 A.2d at 1202–03.

In concluding that the extrajudicial statement in *Graves* was inadmissible, we rejected the proffered non-hearsay purpose on relevancy grounds:

> [W]hen Officer Reynolds' testimony that Trusty told him that Graves was his accomplice was offered before the jury, its only possible relevance as nonhearsay at the guilt/innocence stage was to demonstrate that the investigating officer relied on that information when he included the petitioner's photograph among those assembled for a photographic array to be viewed by the assault victims. That conduct by the police officer would have been just as effectively explained by testimony that his selection of the photographs was based "on information received." When that limited probative value is weighed against the unfair prejudice to the petitioner because of the likelihood that the jury would misuse that information as substantive evidence of guilt, we hold that the trial judge abused his discretion in admitting the testimony.

\* \* \*

> Therefore, if the statement was offered for the purpose of proving the truth of the matter asserted by Trusty, it was clearly inadmissible hearsay. On the other hand, if it was offered for its limited probative value to show that the officer acted upon it in arranging the photographic array, that probative value was greatly outweighed by its unfair prejudice to Graves because of the danger of misuse of the information by the jury.

*Id.* at 42–43, 637 A.2d at 1203–04.

Our Court of Special Appeals and courts in other jurisdictions, when confronted with an officer's trial testimony that

relays specific information received from an informant, generally have ruled such testimony to be inadmissible hearsay. *See Zemo v. State*, 101 Md.App. 303, 306, 312–13, 646 A.2d 1050, 1051, 1054–55 (1994)(concluding that a detective's testimony violated the rule against hearsay when he indicated that he " 'received information ... which led [him] to a couple of names' " and then stated that he " 'was given the name of Joe Zemo' "; the court reasoned that the "only rational conclusion that one can draw from the testimony is that the unnamed source passed on to the detective knowledge that the appellant, 'Joe Zemo,' was implicated in the breaking and entering")(emphasis omitted); *Conley v. State*, 620 So.2d 180, 182–83 (Fla.1993)(holding that it was error for a court to admit an officer's hearsay testimony of a police dispatch report that he " 'received the call in reference to a man chasing a female down the street' " and that "[t]he man supposedly had some type of gun or rifle[,]" especially when the State argued in closing that the officer's testimony about the weapon helped prove the defendant used a rifle to commit the offenses charged); *State v. Bankston*, 63 N.J. 263, 307 A.2d 65, 67–69 (1973)(concluding that a court admitted hearsay by allowing a detective's testimony that the defendant fit the description of the person they were looking for after indicating that based on information received from an informer, officers " 'had a description of [the individual's] clothing' " and learned that " '[h]e was inside the tavern' " and " 'had narcotics in his possession' "; the "inescapable inference from [the detective's testimony] was that the informer had given information that defendant would have narcotics in his possession" and "the jury was led to believe that an unidentified informer ... had told the officers that defendant was committing a crime"); *State v. Braxter*, 568 A.2d 311, 312, 315 (R.I.1990)(ruling inadmissible a detective's testimony that he received information from an informant about a holdup that would take place at Louttit Laundry on August 26, 1986 and reasoning that such testimony that "recounts the substance of a conversation with an informant concerning a crime by the accused is not within the officer's personal knowledge and violates the hearsay

rule"; the testimony was "far more than was necessary to explain the police presence at the laundry" and "had the effect of bolstering the state's case with impermissible hearsay by showing 'as background' that a conspiracy was in the works and that there was an intent to rob the laundry").

In arguing for the statement's admissibility as non-hearsay in this case, the State would have us distinguish *Graves*, *Purvis*, and *Zemo* on the grounds that in those cases, the evidence directly implicated the defendant in the crime with which he was charged by specifically referencing the defendant's name. It argues that here, on the other hand, the confidential informant did not tell the police that Parker was selling heroin, and "said only that someone wearing a blue hat and black sweat shirt was selling heroin on the corner of Carey and Laurens Streets." Specifically distinguishing *Graves*, the State argues that "because the confidential informant did not directly implicate Parker, there was less 'likelihood that the jury would misuse [the statement] as substantive evidence' of Parker's guilt."

We do not view this distinction from *Graves* as material. Use of a defendant's name is not the only way to identify him or her, and when the hearsay provides contemporaneous and specific information about the defendant's clothing, location, and activity, it can be highly persuasive as to the defendant's actual guilt of the crime charged, even without a name. Here, the timing and particularity of the description, without evidence that there were other individuals wearing this type of clothing, left the jury with a virtually inescapable inference that the individual observed by the informant selling heroin at the corner of Carey and Laurens was Parker, who was wearing exactly these clothes when arrested. McGowan testified that he received the informant's tip via a cell phone call and arrived "[w]ithin five minutes" at the location from which he observed Parker. One can hardly conclude, therefore, that the jury was not likely to misuse the informant's information as substantive evidence of Parker's guilt.

Indeed, the State proved this point by using the informant's extrajudicial statement for the truth of the matter asserted. In closing, the State argued as follows:

Mr. Parker got caught with sixteen vials of heroin. He's been charged with possession of heroin and you must find him guilty of possessing this heroin. The evidence in this case was very simple. You heard from Detective McGowan who sat right here at this witness stand. He looked at you straight in the eye. He had no reason not to tell you what happened, and what did he tell you?

*He told you he got a tip from his registered confidential informant that an individual wearing jeans and a black hoody was selling heroin at this corner. So he responded to the corner and what did he see. He saw Mr. Parker who matched that description.*

(Emphasis added.) The State thus ·used the hearsay statement to corroborate McGowan's account that Parker was engaging in "illegal narcotic activity" which explained Parker's heroin possession. *See Conley,* 620 So.2d at 183 (concluding that "[r]egardless of the purpose for which the State claims it offered the evidence, the State *used* the evidence to prove the truth of the matter asserted").

Citing cases from other jurisdictions, the State offers, as alternative grounds for admission, that it was justified in eliciting the informant's statement because out-of-court statements explaining an officer's actions are admissible when the propriety of an investigation is placed at issue. *See, e.g., United States v. Davis,* 154 F.3d 772, 778–79 (8th. Cir.1998), *cert denied,* 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999)(stating that "evidence may not be admitted for the non-hearsay purpose of explaining an investigation where the propriety of the investigation is not a relevant issue at trial[,]" but finding no error in the admission of out-of-court statements when defense counsel argued in opening that "the government did not conduct 'any independent investigation' to verify [an informant's] story and made 'automatic assumptions' about the defendant's guilt"); *Chestnut v. Commonwealth,* 250 S.W.3d 288, 292–94 (Ky.2008)(affirming admission of testimony

by an officer that one of the victims made a "show up" identification of the defendant on the same day of the crime in order to rebut defendant's testimony accusing the officers of lying about their investigation, when the testimony was offered to prove the officer's motive for arresting the defendant). Applying the rationale in these cases, the State argues that admission of the informant's statement was proper because Parker, in denying (1) having any heroin on his person, (2) saying "oh shit" to McGowan, and (3) telling McGowan that he had "a little bit of heroin in my back pocket[,]" implied that McGowan was "lying about the circumstances surrounding his investigation of Parker and Parker's ultimate arrest."

Parker's mere denials did not place at issue the propriety of McGowan's investigation such that the State was justified in eliciting the informant's extrajudicial statements. Parker never challenged at trial why McGowan was at the 1200 block of Laurens Street. He never argued to the jury in opening that McGowan insufficiently investigated the veracity of the informant's information and made automatic assumptions about his guilt, as in *Davis*. Nor did Parker accuse McGowan of lying and question McGowan's motive for arresting Parker, as in *Chestnut*. In his opening statement, defense counsel merely asserted Parker's innocence and exhorted the jury to apply the reasonable doubt standard and presumption of innocence:

> Mr. Parker has been charged with a crime he didn't commit. The State's Attorney and a police officer who you're going to see later[,] they're the ones accusing and prosecuting him. He didn't do this. He's not taking a deal so we're having a trial and as a result we need you. We need you to sit and listen to the evidence and apply the standard which in this case is guilt beyond a reasonable doubt.

> \* \* \*

> [Parker] is presumed innocent. That means that each and everyone [sic] of you during this entire process take it for granted that he did not commit this crime. Only if the State can remove all of that reasonable doubt do you get to that point.

Defense counsel then responded to the State's Attorney's several statements in open argument prefaced by the words "Detective McGowan will tell you[,]" and encouraged the jury to base their verdict on the facts:

One of the things that I'm not going to do right now is talk about the evidence.

Shoot, the State certainly did. I think some of the most interesting words that the State's Attorney mentioned is Detective McGowan will tell you. Evaluate the evidence ladies and gentlemen. At the end of this case we will talk about the facts. It is my belief that after you've heard those facts you're going to find Kelvin Parker not guilty.

The informant's statement, moreover, was introduced during the State's case-in-chief and then used for the truth of the matter asserted in the State's closing argument. These two aspects fatally undermine the State's asserted non-hearsay purpose justification. In permitting McGowan to explain why he was working at the 1200 block of Laurens Street, the court should have allowed McGowan to say only that he was there "based 'on information received.'" *See Graves*, 334 Md. at 42, 637 A.2d at 1204.

### *Harmless Error*

The State argues that the admission of McGowan's testimony regarding the informant's statements, if error, was harmless beyond a reasonable doubt. In assessing whether an error was harmless, we apply the following test as articulated in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976):

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded— may have contributed to the rendition of the guilty verdict.

The State posits that the jury "was presented with two diametrically opposed versions of events" and its verdict was founded on its finding McGowan's testimony more credible than Parker's. It then asserts that the admission of the informant's statements, while helping explain why McGowan was in the area conducting surveillance, did not influence this credibility determination. According to the State, "if the jury found Detective McGowan credible, then his testimony amply supported a guilty verdict even without the confidential informant's statements.... If the jury found Detective McGowan not credible, however, it would not have credited his testimony about the confidential informant's statements."

This argument simply begs the question. Credibility is determined by many factors, including the existence of corroborating evidence. The State's argument suggests that the jury makes its credibility determination simply on the jurors' personal assessments of the witness based on his story, his appearance, his body language, and his words. And it implies that the jury is more likely to believe a police officer just because he or she is a police officer—an unacceptable bias—or because the officer is not charged with a crime. Were we to make this assumption, we would sabotage two cornerstones of our criminal justice system—neutrality and the presumption of innocence.

We cannot declare a belief, beyond a reasonable doubt, that the admission of the informant's statement into evidence in no way influenced the jury's verdict. Both McGowan and Parker testified that there were two other officers present at the time of Parker's arrest, but only McGowan was called to testify. The State introduced into evidence the sixteen vials of heroin McGowan said he found on Parker, but McGowan indicated that the vials were never fingerprinted. The jury evidently considered this case a close one, as it informed the court on two occasions before returning its verdict that it was deadlocked. In this close case, that turned on whether the jury credited McGowan's testimony over Parker's, the informant's statement that an individual fitting Parker's description was "selling heroin from his person" at the corner of Carey and

Laurens provided potentially scale-tipping corroboration for McGowan's testimony that he observed Parker engage in what he believed to be "illegal narcotic activity" and then recovered from Parker sixteen gel caps of heroin. As in *Graves,* the testimony in question "added substantial, perhaps even critical, weight to the State's case" against Parker. 334 Md. at 43, 637 A.2d at 1204.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL FOR BALTIMORE CITY.**