GERBER, J.
The defendant appeals from his convictions of burglary of an occupied dwelling and criminal mischief.. He primarily argues the trial court erred in overruling his hearsay objection, thereby allowing the investigating detective to testify that a police dispatcher told the detective that a vehicle in the victim’s driveway was registered to the defendant. We agree with the defendant, because the state used the dispatcher’s statement to prove the truth of the matter asserted, and no hearsay exception existed for the statement. The error was not harmless. Thus, we reverse for a new trial.
We present this opinion in six parts:
1. the victim’s testimony;
2. the investigating detective’s testimony and the hearsay objection;
3. the defendant’s misidentification defense;
4. the state’s use of the dispatcher’s statement;
5. the parties’ arguments on appeal; and
6. our analysis of the arguments.
1. The Victim’s Testimony
The victim testified as follows. He was napping in his bedroom in the afternoon. He awoke upon hearing a noise outside his window. When he looked towards, the window, he saw a man ripping the window from the frame. The man then began to climb through the opening, and into the house. The victim could see the man’s face clearly. The victim did not think the man would fit through the opening due to his size.
*426 The victim grabbed a wireless phone and ran out of his house through the garage, yelling that he was calling 911. When the victim got out to his driveway, he saw a car parked in the driveway. The car did not belong to the victim.--
The man followed the victim through the house and garage. While the victim was on the phone with the' 911 dispatcher, the man got in the car in the driveway and drove away.
The victim provided the 911 dispatcher with a description of the vehicle, which had a Virginia tag. The victim also provided the 911 dispatcher with the vehicle’s tag number.
When a police officer arrived after the incident, the victim said the man who broke into his house was about six feet tall and had dirty blond hair.
A week later, the victim' identified the defendant from a photo lineup which the investigating detective showed him. The victim was “100 percent” confident the defendant was the man who broke into his house. At trial, the victim also identified the defendant as the man who broke into his house.
2. The Investigating Detective’s Testimony and the Hearsay Objection
During the investigating detective’s testimony, the state sought to question the detective about how he learned the defendant’s name in order to include the defendant’s photo in the lineup.
The defendant, objected on hearsay grounds as to .any information which the detective obtained .to link the defendant to the vehicle seen in the victim’s, driveway. The defendant argued it was double hearsay because the- victim gave the information to the 911 dispatcher, and a dispatcher then gave the information to the detective.
The trial court overruled the defendant’s hearsay objection. The detective then testified as follows:
State: In this particular case, how did you come to the [defendant’s name]? ...
Detective: ... Speaking with the victim on the phone, he explained to me that he believes that the suspect that was at his house was driving a vehicle and he was on the phone with 911. He walked out to the car and gave them the tag on the phone so that our dispatch would know who the, who the vehicle is. Our dispatch ran that tag and that information was given to me from the dispatch. And that’s how I 'got his name because the vehicle was registered to [the defendant ].
(emphasis added).
3. The Defendant’s Misidentification Defense
The defendant testified that he is 5'4" and weighs 140 pounds. He has black hair, and has not changed his appearance from the date of the incident. He is from Virginia, but he lives in Jupiter. He owned a vehicle fitting the victim’s description, although it was a different make and model than what the victim described. On the date- of the’ incident, and on other dates that month, the defendant attended a surf contest in Melbourne a few miles' north of the victim’s house in Vero Beach. The defendant allowed othérs to use his vehicle on some days of the surf contest, but he could not remember if someone used his vehicle on the date of the incident. However, he claimed that on the date of the incident, he was at the surf contest from the morning until approximately 5:00 p.m.
During the state’s cross-examination of the defendant, the state repeatedly questioned him on the fact-that the vehicle in the victim’s driveway had a tag which was registered to him:
*427 Q. The tag number from the vehicle in [the victim’s] driveway comes back to your car. How do you explain that?
A. It wasn’t my vehicle there. I did not burglarize his house.
[[Image here]]
Q.... [D]o you think [the victim] just came up with—
A. I have no idea.
Q. —a Virginia license plate and—
A. I have no idea. • ■ .;
Q. —happened] to guess the correct numbers that just came back to you?
A. Sir, I have no idea. I cannot answer that question.
[[Image here]]
Q. But somehow your car with your tag ends up in [the victim’s] driveway; isn’t that true?
A. I have no idea. I was not driving my vehicle. I have no idea where [the victim] lives. I do not know. I cannot answer your question,
(emphasis added).
4. The State’s Use of the Dispatcher’s Statement
During the state’s closing argument, the state repeatedly argued that the vehicle’s tag corroborated the victim’s identification of the defendant:
[The victim] calls in the tag number' for the tag or the vehicle that’s in his driveway. And that tag, you heard, was a Virginia license plate. He calls that in and lo and behold, who does that tag come to? [The defendant.] The vehicle’s registered to him.
[[Image here]]
That photo lineup, that tag all corroborates [the victim’s] testimony which was that’s the guy that I saw.
[[Image here]]
Ladies and gentlemen, it’s not a coincidence that [the defendant’s] car’s in the driveway, that the tag comes back registered to him, that [the victim] picks him out of the photo lineup and then comes into court today and says, is the person here in the room, yes, I recognize him.
[[Image here]]
[The defendant] took the stand and when asked, -your car’s in the driveway. He sáys it wasn’t, it wasn’t there, it was never there at his house. So does [the victim ] come up with this license plate from Virginia out of ... his mind? Then does he take that tag that is from a different state and then come up with a series of numbers that fit that tag that comeback to [the defendant]?
[[Image here]]
[The victim] ... • quickly and confidently identifies and circles [the defendant], whose tag ivas in his, whose car was in his front driveway that same day. It’s not a coincidence, ladies and gentlemen.
[[Image here]]
Maybe [the victim] was a little bit vague about the make and model of the vehicle but he does call in the license plate and the tag number. And that’s registered to this defendant who [the victim] then identifies as the person who broke in, who he identified to you today as that person.
The jury found the defendant guilty as charged of burglary of an occupied dwelling and criminal mischief. This appeal followed.
5. The Parties’ Arguments oh Appeal
The defendant argues the trial court erred in overruling his hearsay objection, thereby allowing the detective to testify that a dispatcher told the detective that *428 the vehicle in the victim’s driveway was registered to the defendant.
The state responds that the victim’s statements to the dispatcher regarding the vehicle and tag information were made while the victim was perceiving the vehicle and the tag, and therefore fall within the spontaneous statement exception to the hearsay rule. See § 90.803(1), Fla. Stat. (2014) (“[T]he following are not inadmissible as evidence ... A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.”).
However, the state provides no justification for the trial court admitting, through the detective’s testimony, the dispatcher’s statement that the tag on the vehicle was registered to the defendant. Instead, the state argues that any error in admitting the dispatcher’s statement was harmless because: the victim identified the defendant in the photo lineup and at trial; the victim’s description of the vehicle in his driveway was similar to the defendant’s vehicle; and the defendant admitted he was close to the victim’s home on the day of the incident.
6. Our Analysis of the Arguments
We review the trial court’s decision to admit the detective’s testimony for an abuse of discretion, limited by the rules of evidence. See Allen v. State, 137 So.3d 946, 956 (Fla.2013) (on a hearsay issue, an appellate court “reviews a trial court’s decision to admit evidence under an abuse of discretion standard. The trial court’s discretion is not unfettered, but is limited by the rules of evidence.”) (internal citations and quotation marks omitted).
We agree with the defendant’s argument that the trial court erred in overruling his hearsay objection, thereby allowing the detective to testify that a dispatcher told the detective that the vehicle in the victim’s driveway was registered to the defendant.
We begin with the statutory definition of hearsay. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (2014).
Here, when the state, through the detective, offered the dispatcher’s (the declar-ant’s) out of court statement that the vehicle was registered to the defendant (the matter asserted), the state did not indicate whether it was offering the statement to prove the truth of the matter asserted.
However, it appears that the state, in two ways, used the dispatcher’s out of court statement to prove the truth of the matter asserted:
(1) the state repeatedly cross-examined the defendant on the fact that the vehicle in the victim’s driveway had a tag which was registered to the defendant; and
(2) the state’s closing argument repeatedly argued that the vehicle’s tag corroborated the victim’s identification of the defendant.
Because the state used the dispatcher’s out of court statement to prove the truth of the matter asserted, we conclude the trial court erred in admitting the dispatcher’s statement. The fact that the spontaneous statement exception may have allowed for the admission of the victim’s statement to the 911 dispatcher does not excuse the erroneous admission of the dispatcher’s statement to the investigating detective.
Our conclusion is supported by our supreme court’s controlling precedent in Conley v. State, 620 So.2d 180 (Fla.1993). In Conley, the trial court admitted the *429 hearsay testimony of a police dispatch re-port that a man was chasing a woman down the street with a gun or rifle. Id. at 182. The state later referred to this statement in closing argument to argue that the alleged victim’s testimony proved that the defendant carried a rifle during the criminal episode. Id. The district court affirmed, holding that the dispatcher’s statement, introduced through the investigating officer, was admissible because it was merely offered to prove why the officer went to the scene to investigate. Id.
However, our supreme court quashed the district court opinion. Id. at 184. The supreme court reasoned:
Regardless of the purpose for which the State claims it offered the evidence, the State used the evidence to prove the truth of the matter asserted. In so doing, the statement constituted hearsay and fell within no recognized exception to the rule of exclusion.
Even if we were to conclude that the testimony was not used to prove the truth of the matter asserted, the contents of the statement were not relevant to establish a logical sequence of events, nor was the reason why officers arrived at the scene a material issue in the case.... [T]he inherently prejudicial effect of admitting into evidence an out-of-court statement relating accusatory information to establish the logical sequence of events outweighs the probative value of such evidence. Such practice must be avoided.
Id. at 183 (internal footnotes and citations omitted).
We have followed Conley on repeated occasions before today. See, e.g., Tillman v. State, 964 So.2d 785, 789 (Fla. 4th DCA 2007) (“Based upon the wealth of authority in which the courts have consistently held such hearsay statements inadmissible, the trial court erred in admitting the BOLOs which suggested not only that appellant was a suspect in an armed kidnapping but that he fled the scene because he had a firearm. The reasons proffered for its admission, namely the officers’ state of mind or to show a logical sequence of events, have been rejected in prior cases, and we reject their application here also.’’). But see S.D.T. v. State, 33 So.3d 779, 780 (Fla. 4th DCA 2010) (creating an exception to allow the use of a BOLO to establish an element of the crime of resisting without violence where the state offers the BOLO not to prove the truth of its contents, but to establish that the arresting officer was engaged in the lawful execution of a legal duty at the time of the stop; “This non-hearsay use of the BOLO to establish an element of the crime of resisting without violence distinguishes this case from those cases which have held that the contents of a BOLO are inadmissible hearsay.”).
Similar to Conley and its progeny, here the trial court erred in admitting the dispatcher’s statement to the detective that the vehicle in the victim’s driveway was registered to the defendant. Even if the state had proffered that its purpose for offering the dispatcher’s statement was to show the detective’s reason for including the defendant’s photo in the lineup shown to the victim, we would have been compelled to reject that application, as our supreme court and this court have done in prior cases.
Lacking merit is the state’s argument that any error in admitting the dispatcher’s statement was harmless because the victim identified the defendant in the photo lineup and at trial, the victim’s description of the vehicle in his driveway was similar to the defendant’s vehicle, and the defendant admitted he was close to the victim’s home on the day of the incident. The state essentially is arguing that the error was harmless because the evidence against the defendant was overwhelming. However, the harmless error test “is not a *430 sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.” State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). “The question is whether there is a reasonable possibility that the error affected the verdict, ... If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” Id.
Here, we cannot say beyond a reasonable doubt that the error did not affect the verdict. The state repeatedly cross-examined the defendant on the fact that the vehicle in the victim’s driveway had a tag which was registered to the defendant, and the state’s closing argument repeatedly argued that the vehicle’s tag corroborated the victim’s identification of the defendant, which clearly was at issue. Therefore, the error is by definition harmful. See Bartholomew v. State, 101 So.3d 888, 894 (Fla. 4th DCA 2012) (“When determining prejudice, appellate courts may look whether the State compounded the error by relying on the evidence in final argument. This applies regardless of whether there is a separate objection to the use of the evidence in final argument.”) (internal citation omitted).
Based on the foregoing, we reverse and remand for a new trial. Our decision moots the defendant’s second argument that fundamental error resulted when the state failed to prove the amount of damage for the defendant’s felony criminal mischief conviction.

Reversed and remanded for a new trial.

CIKLIN, C.J., and WARNER, J., concur.